SUSAN S. STARR *v.* COMMISSIONER OF
ENVIRONMENTAL PROTECTION ET AL.
(15234)

Callahan, Borden, Berdon, Norcott and Katz, Js.

Argued February 16—officially released April 30, 1996

*John M. Looney*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellant-appellee (named defendant).

*Kathleen Eldergill*, for the appellee-appellant (plaintiff).

KATZ, J. The dispositive issue in this appeal is whether the plaintiff, Susan S. Starr, acquired a polluted 44.3 acre parcel of land by inheritance, thereby making her an innocent landowner pursuant to General Statutes § 22a-452d.

The following facts and procedural history are undisputed. On February 23, 1976, the plaintiff's husband, S. Leger Starr (decedent), died leaving a will that named the plaintiff the executrix of his estate. The will created two trusts, a marital trust and a residuary trust. The decedent's will gave the plaintiff the discretion to distribute into one of the two trusts what remained of the estate after the payment of funeral expenses and expenses related to the administration of the estate. The will also gave the plaintiff the authority to take

assets directly instead of placing them in the marital trust and to transfer property without court approval.

When the decedent died, he was the controlling shareholder of three corporations, Don, Inc., L and S Realty, Inc., and Mountview, Inc. He owned approximately ninety-eight shares of stock in each of these corporations while the plaintiff and her sister each owned one share.[1] These corporations were the title owners of the parcel of land (property) presently at issue.[2] Upon his death, the decedent's ninety-eight shares became part of his estate. On January 31, 1978, at the advice of her attorneys, the plaintiff, acting as executrix, merged the three corporations into a preexisting corporation, Dale, Inc., which consequently became the owner of the land. Four years later, the plaintiff dissolved Dale, Inc., causing the corporation's assets to be distributed to the shareholders, which included the decedent's estate. Thereafter, on January 30, 1987, by virtue of a fiduciary deed, the plaintiff transferred the property to herself.

Within a few years, the named defendant, the commissioner of environmental protection (commissioner), began to investigate various complaints of odors emanating from the property. Because the commissioner determined that the plaintiff was maintaining a condition that was reasonably expected to create a source of pollution to the waters of the state in violation of General Statutes § 22a-432,[3] the commissioner issued

[1] The commissioner claims that the distribution of ownership of shares is unclear because the inventory in the Probate Court indicated that the decedent owned between forty-nine and fifty-nine shares of stock in each of these corporations. Because the commissioner adopted the plaintiff's testimony regarding the ownership of these shares, however, it is a finding of fact to which we are bound. See *Dalia* v. *Lawrence*, 226 Conn. 51, 71, 627 A.2d 392 (1993); *United Parcel Service, Inc.* v. *Administrator*, 209 Conn. 381, 385, 551 A.2d 724 (1988).

[2] The property is a 44.3 acre parcel located on the east side of Simon Road in Enfield.

[3] General Statutes § 22a-432 provides: "Order to correct potential sources of pollution. If the commissioner finds that any person has established a

an order to the plaintiff on July 9, 1990, requiring that she "eliminate soil, surface and groundwater pollution." Pursuant to General Statutes § 22a-436,[4] the plaintiff requested a hearing to review this order. On June 28, 1991, Lewis J. Miller, a hearing officer at the department

facility or created a condition before or after June 25, 1985, or is maintaining any facility or condition which reasonably can be expected to create a source of pollution to the waters of the state, he may issue an order to such person to take the necessary steps to correct such potential source of pollution. Any person who receives an order pursuant to this section shall have the right to a hearing and an appeal in the same manner as is provided in sections 22a-436 and 22a-437. If the commissioner finds that the recipient of any such order fails to comply therewith, he may request the attorney general to bring an action in the superior court for the judicial district of Hartford-New Britain to enjoin such person from maintaining such potential source of pollution to the waters of the state or to take the necessary steps to correct such potential source of pollution. All actions brought by the attorney general pursuant to the provisions of this section shall have precedence in the order of trial as provided in section 52-191."

Section 22a-432 has been amended by Nos. 95-190 and 95-218 of the 1995 Public Acts, which added language at the end of the text. Those amendments, however, are not relevant to this appeal.

[4] General Statutes § 22a-436 provides: "Hearing on order to abate. Each order to abate pollution issued under section 22a-428 or 22a-431 or decision to deny under subsection (b) or (c) of section 22a-430 shall be sent by certified mail, return receipt requested, to the subject of such order or decision to deny and shall be deemed issued upon deposit in the mail. Any person who or municipality which is aggrieved by any such order or decision to deny an application without prior hearing under subsection (b) of section 22a-430 may, within thirty days from the date such order or decision is sent, request a hearing before the commissioner. The commissioner shall not grant any request for a hearing at any time thereafter. After such hearing, the commissioner shall consider the facts presented to him by the person or municipality, including, but not limited to, technological feasibility, shall consider the rebuttal or other evidence presented to or by him, and shall then revise and resubmit the order to the person or municipality, or inform the person or municipality that the previous order has been affirmed and remains in effect. The request for a hearing as provided for in this section or a decision under subsection (b) of section 22a-430 made after a public hearing shall be a condition precedent to the taking of an appeal by the person or municipality under the provisions of section 22a-437. The commissioner may, after the hearing provided for in this section, or at any time after the issuance of his order, modify such order by agreement or extend the time schedule therefor if he deems such modification or extension advisable or necessary, and any such modification or extension shall be

of environmental protection, issued a final decision upholding the order.

Thereafter, the plaintiff appealed to the Superior Court, *Maloney, J.,*[5] which concluded that because the plaintiff had not created the condition that caused the pollution, had not owned the property when it was polluted, and had not acquiesced to its pollution, the commissioner had improperly determined that the plaintiff's passive ownership of the property constituted "maintaining" a condition that reasonably could be expected to create a source of pollution within the meaning of § 22a-432. The trial court further concluded that, because of the commissioner's failure to comply with the Connecticut Water Pollution Control Act; General Statutes § 22a-416 et seq.; which provides that the commissioner must first attempt to seek reimbursement from those who actually caused the pollution[6] and,

deemed to be a revision of an existing order and shall not constitute a new order. There shall be no hearing subsequent to or any appeal from any such modification or extension."

[5] The plaintiff appealed from the commissioner's final decision to the Superior Court pursuant to General Statutes §§ 22a-437 and 4-183.

General Statutes § 22a-437 provides: "Appeal. (a) Any person who or municipality which is aggrieved by a decision under subsection (b) of section 22a-430 or by any order of the commissioner other than an order under section 22a-6b, to abate pollution may, after a hearing by the commissioner as provided for in section 22a-436 or subsection (b) of section 22a-430, appeal from the final determination of the commissioner based on such hearing to the superior court as provided in chapter 54. Such appeal shall have precedence in the order of trial as provided in section 52-192.

"(b) Notwithstanding the provisions of any other statute to the contrary, any appeal by a person or municipality aggrieved by an order of the commissioner to abate pollution, other than an order under section 22a-6b, or by a decision under subsection (b) of section 22a-430, shall be pursuant to this section."

General Statutes § 4-183 provides in relevant part: "Appeal to superior court. (a) A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the superior court as provided in this section. The filing of a petition for reconsideration is not a prerequisite to the filing of such an appeal."

[6] General Statutes (Rev. to 1991) § 22a-451 provides in relevant part: "Liability for pollution, contamination or emergency. Emergency spill response

only if the commissioner is unsuccessful in securing payment from the polluter can reimbursement be sought from a passive landowner in the form of a lien on the polluted property for the amount of the cleanup costs,[7] the commissioner improperly had found the

fund. (a) Any person, firm or corporation which directly or indirectly causes pollution and contamination of any land or waters of the state or causes an emergency through the discharge, spillage, uncontrolled loss, seepage or filtration of oil or petroleum or chemical liquids or solid, liquid or gaseous products or hazardous wastes or which owns any hazardous wastes deemed by the commissioner to be a potential threat to human health or the environment and removed by the commissioner shall be liable for all costs and expenses incurred in containing, removing, monitoring or mitigating such pollution and contamination, emergency or hazardous waste, provided, if such pollution or contamination or emergency was negligently caused, such person, firm or corporation may, at the discretion of the court, be liable for damages equal to one and one-half times the cost and expenses incurred and provided further if such pollution or contamination or emergency was wilfully caused, such person, firm or corporation may, at the discretion of the court, be liable for damages equal to two times the cost and expenses incurred. Upon request of the commissioner, the attorney general shall bring a civil action to recover all such costs and expenses.

"(b) If the person, firm or corporation which causes any discharge, spillage, uncontrolled loss, seepage or filtration does not act immediately to contain and remove or mitigate the effects of such discharge, spillage, loss, seepage or filtration to the satisfaction of the commissioner, or if such person, firm or corporation is unknown, and such discharge, spillage, loss, seepage or filtration is not being contained, removed or mitigated by the federal government, a state agency, a municipality or a regional or interstate authority, the commissioner may contract with any person issued a permit pursuant to section 22a-454 to contain and remove or mitigate the effects of such discharge, spillage, loss, seepage or filtration. The commissioner may contract with any person issued a permit pursuant to said section 22a-454 to remove any hazardous waste that he deems to be a potential threat to human health or the environment.

"(c) Whenever the commissioner incurs contractual obligations pursuant to subsection (b) of this section and the responsible person, firm or corporation or the federal government does not assume such contractual obligations, the commissioner shall request the attorney general to bring a civil action pursuant to subsection (a) of this section to recover the costs and expenses of such contractual obligations. If the responsible person, firm or corporation is unknown, the commissioner shall request the federal government to assume such contractual obligations to the extent provided for by the federal Water Pollution Control Act."

[7] General Statutes § 22a-452a provides in relevant part: "State lien against real estate as security for amounts paid to clean up hazardous waste. (a) On and after June 3, 1985, any amount paid by the commissioner of environ-

plaintiff responsible for the cleanup of the property. The commissioner appealed from the judgment of the trial court to this court, and we reversed. See *Starr* v. *Commissioner of Environmental Protection*, 226 Conn. 358, 627 A.2d 1296 (1993).

In that case, we concluded that the trial court had failed to give due deference to the commissioner's interpretation of the word "maintaining" as used in § 22a-432. We reasoned that because "maintaining" is an ambiguous term that can be interpreted to apply to a passive landowner as well as to one who actively created the pollution, and because "it is the well established practice of this court to accord great deference to the construction given [a] statute by the agency charged with its enforcement"; (internal quotation marks omitted) id., 372; the trial court should have deferred to the commissioner's interpretation. Id., 376. The commissioner's interpretation was also supported by the legislative history of the act. Id., 381–90. Additionally, we concluded that neither the language of the act nor its legislative history suggested that the commissioner was required first to attempt to recover from the party responsible for the pollution before the commissioner could impose a lien on the property itself. Rather, we concluded that the intent of the legislature was to provide the commissioner with alternative courses of action and the discretion to choose among them. Id., 390–95. Consequently, we reversed the judgment of the trial court and upheld the commissioner's order. Id., 395.

While *Starr* v. *Commissioner of Environmental Protection*, supra, 226 Conn. 358, was pending before this

mental protection pursuant to subsection (b) of section 22a-451 to contain and remove or mitigate the effects of a spill shall be a lien against the real estate on which the spill occurred or from which it emanated in accordance with the provisions of this section, except that such lien against real estate which has been transferred in accordance with the provisions of sections

court, the legislature enacted No. 93-375 of the 1993 Public Acts (P.A. 93-375), entitled "An Act Establishing an Innocent Landowner Defense in Pollution Cases," codified at General Statutes §§ 22a-452d[8] and 22a-452e.[9] Thereafter, the plaintiff filed a motion for reconsidera-

22a-134 to 22a-134d, inclusive, shall not have priority over any previous transfer or encumbrance."

[8] General Statutes § 22a-452d provides: "Innocent landowner defense: Definitions. As used in this section, section 22a-452e and section 22a-433:

"(1) 'Innocent landowner' means: (A) A person holding an interest in real estate, other than a security interest, that, while owned by that person, is subject to a spill or discharge if the spill or discharge is caused solely by any one of or any combination of the following: (i) An act of God; (ii) an act of war; (iii) an act or omission of a third party other than an employee, agent or lessee of the landowner or other than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the landowner, unless there was a reasonably foreseeable threat of pollution or the landowner knew or had reason to know of the act or omission and failed to take reasonable steps to prevent the spill or discharge, or (iv) an act or omission occurring in connection with a contractual arrangement arising from a published tariff and acceptance for carriage by a common carrier by rail, unless the landowner knew of the act or omission and failed to take reasonable steps to prevent the spill or discharge; or (B) a person who acquires an interest in real estate, other than a security interest, after the date of a spill or discharge if the person is not otherwise liable for the spill or discharge as the result of actions taken before the acquisition and, at the time of acquisition, the person (i) does not know and has no reason to know of the spill or discharge, and inquires, consistent with good commercial or customary practices, into the previous uses of the property; (ii) is a government entity; (iii) acquires the interest in real estate by inheritance or bequest; or (iv) acquires the interest in real estate as an executor or administrator of a decedent's estate or as a trustee that receives the interest in real estate from a decedent's estate, provided such decedent was the person holding the interest in real estate.

"(2) 'Discharge' means a discharge causing pollution, as those terms are defined in section 22a-423.

"(3) 'Spill' means a spill as defined in section 22a-452c."

Although § 22a-452d (1) (A) (iv) has been amended by No. 95-190, § 7, of the 1995 Public Acts, the amendments are not relevant to this appeal.

[9] General Statutes § 22a-452e, as amended by Nos. 95-190, § 8, and 95-218, § 17, of the 1995 Public Acts, provides: "Innocent landowner defense: Liability. (a) An innocent landowner holding or acquiring an interest in real estate that has been subjected to a spill or discharge shall not be liable, except through imposition of a lien against that real estate under section 22a-452a, for any assessment, fine or other costs imposed by the state for

tion pursuant to General Statutes § 4-181a (b)[10]
requesting reconsideration of the commissioner's final

the containment, removal or mitigation of such spill or discharge or for any order of the commissioner to abate or remediate such spill or discharge which order was issued on or before August 1, 1990, and is subject to appeal as of July 1, 1995, and after July 1, 1996, for any order to abate or remediate such spill or discharge which order is issued by the commissioner after July 1, 1996. A person claiming immunity under this subsection must establish that he is an innocent landowner by a preponderance of the evidence. In determining whether a person is an innocent landowner, a court may take into account any specialized knowledge or experience of the person, the relationship of the consideration paid for the interest in the real estate to the value of such interest if the real estate were not polluted, commonly known or reasonably ascertainable information about the real estate, the obviousness of the presence or likely presence of the spill or discharge and the ability to detect such spill or discharge by appropriate inspection.

"(b) Notwithstanding the provisions of subsection (a) of this section: (1) Any amount paid by the commissioner of environmental protection pursuant to subsection (b) of section 22a-451 to contain, remove or mitigate the effects of the spill or discharge shall be a lien against the real estate, as provided by section 22a-452a, in an amount not to exceed the value of the land appraised as if it were uncontaminated and (2) an innocent landowner who sells an interest in real estate that has been subjected to a spill or discharge shall be liable, to the extent of the net proceeds of such sale, for the costs of containing, removing or mitigating the effects of such spill or discharge. For the purposes of this subsection, 'net proceeds' means proceeds received by the person after payment of the reasonable expenses of the sale.

"(c) The liability of a person holding a security interest in real estate who acquires title to the real estate by virtue of a foreclosure or tender of a deed in lieu of foreclosure shall be limited as provided in section 22a-452b.

"(d) This section shall apply to any spill or discharge which occurred before or after July 6, 1995, except that it shall not affect any enforcement or cost recovery action if such action has become final, and is no longer subject to appeal, prior to July 6, 1995."

[10] General Statutes § 4-181a (b) provides: "On a showing of changed conditions, the agency may reverse or modify the final decision, at any time, at the request of any person or on the agency's own motion. The procedure set forth in this chapter for contested cases shall be applicable to any proceeding in which such reversal or modification of any final decision is to be considered. The party or parties who were the subject of the original final decision, or their successors, if known, and intervenors in the original contested case, shall be notified of the proceeding and shall be given the opportunity to participate in the proceeding. Any decision to reverse or modify a final decision shall make provision for the rights or privileges of any person who has been shown to have relied on such final decision."

decision. That motion was granted and, after a hearing, the commissioner concluded that because the plaintiff had not established that she was an "innocent landowner" within the meaning of the P.A. 93-375, she was therefore fully liable for the cleanup costs. The commissioner reasoned that the plaintiff had not acquired the property by "inheritance or bequest" under § 22a-452d (1) (B) (iii) because, when the decedent died, he did not own the property in question. Rather, the property was owned by three corporations of which the decedent was a majority shareholder. The plaintiff had acquired the property as a result of the dissolution of Dale, Inc., and the distribution of its assets to its shareholders. Consequently, in the commissioner's view, "the site was not [the decedent's] to give" and he could not have devised the property to the plaintiff.

Furthermore, the commissioner reasoned that the plaintiff had acquired the property by her own volition in that she willingly had transferred ownership of the property from the estate to herself. According to the commissioner, "[w]hen the legislature enacted P.A. 93-375 limiting the liability of those who acquire polluted land by inheritance or bequest, it surely intended to limit the liability not of those who acquire such land by their own volition, but rather of those upon whom the financial burden of polluted land is involuntarily thrust. Ownership of the polluted land involved here was not thrust by the decedent upon [the plaintiff]; she had the power to dispose of the site entirely as she chose, and she chose to dispose of it by taking title herself."

Additionally, the commissioner rejected the plaintiff's argument that she did not know, and had no reason to know, of the pollution because she had failed to "[inquire], consistent with good commercial or customary practices, into the previous uses of the property." General Statutes § 22a-452d (1) (B) (i). The commis-

sioner reasoned that had the plaintiff conducted a reasonable investigation of the property, she would have discovered the pollution.

The plaintiff appealed from the decision of the commissioner to the Superior Court, *Hodgson, J.*, which concluded, inter alia,[11] that although the plaintiff had acquired the property partially by inheritance, because she also had acquired it partially by the liquidation of Dale, Inc., she was not an innocent landowner. Additionally, the trial court determined that because the commissioner had disbelieved the plaintiff's witnesses regarding whether the plaintiff had "inquire[d], consistent with good commercial or customary practices, into the previous uses of the property," but had failed to present any contrary evidence, the commissioner had improperly relied on evidence not in the record to reach his decision.

In deciding that the plaintiff had not "inherited" the property pursuant to § 22a-452d (1) (B) (iii), the trial court first determined that it was presented with a question of law, namely, whether the plaintiff had inherited the property. The court explained that because "[t]he interpretation of laws concerning inheritance and corporate shares cannot be said to be within the special expertise of the agency headed by the Commissioner of Environmental Protection . . . [the commissioner's] determination with regard to such issues is not entitled to deference . . . ." Instead, the court independently construed P.A. 93-375 " 'to ascertain and give effect to the apparent intent of the legislature.' " *West Hartford Interfaith Coalition, Inc.* v. *Town Council*, 228 Conn. 498, 507, 636 A.2d 1342 (1994); *Vaillancourt*

---

[11] The plaintiff also claimed in the trial court that the commissioner's decision was the product of bias and impermissible ex parte communications. Because these issues are not relevant to the appeal before us, we do not discuss the trial court's disposition of them.

v. *New Britain Machine/Litton,* 224 Conn. 382, 390, 618 A.2d 1340 (1993).

The court then characterized the legal issue before it as "whether the inheritance must be a direct one of land held by the decedent in his own name to an heir, or whether a person who inherits shares that are later converted into real estate has likewise acquired the interest by inheritance." The trial court concluded that the legislature did not intend the word "inheritance" in § 22a-452d to have the narrow legal definition of intestate distribution of property and that § 22a-452d (1) (B) (iii) does not require that the decedent own the land at the time of his death.[12] The trial court further concluded that "the plaintiff's ownership of the land was at least in part the result of her entitlement pursuant to [General Statutes] § 33-380[13] to receive a pro rata share of the corporation's assets corresponding to her pro rata share of the issued stock, and that she [had] acquired this interest by operation of law in her capacity as a shareholder and not by inheritance." Because the plaintiff owned only one share of stock in the dissolved

---

[12] The court noted § 22a-452d (1) (B) (iv), in contrast, which provides the innocent landowner defense to those who acquire an "interest in real estate as an executor or administrator of a decedent's estate or as a trustee that receives the interest in real estate from a decedent's estate, *provided such decedent was the person holding the interest in real estate.*" (Emphasis added.) Because subsection (1) (B) (iii) of that statute does not impose the requirement that the decedent own the real estate at the time of his death, the trial court concluded that ownership of the land by the corporations at the time of the decedent's death did not affect the plaintiff's status as an innocent landowner under that subsection. Although the commissioner argued in the trial court that corporate ownership of the land meant that it was not the decedent's to devise to the plaintiff, he does not reassert that claim in this court.

[13] General Statutes § 33-380 provides in relevant part: "Liquidating distribution of assets. (a) When a dissolved corporation has paid, satisfied and discharged or made adequate provision for all its liabilities and obligations, it shall distribute the remainder of its assets, either in cash or in kind, in one or more liquidating distributions among its shareholders according to their respective rights and interests."

corporation, however, she necessarily had inherited part of the property through the decedent's estate, which owned ninety-eight shares. See footnote 1. Having concluded that the plaintiff had acquired the property partially by inheritance and that neither the language of § 22a-452d nor its legislative history indicates that the innocent landowner defense applies to one who acquires land partially by inheritance and partially by other means, the trial court proceeded to evaluate whether the plaintiff was an innocent landowner under § 22a-452d (1) (B) (i) because she had "no reason to know" of the pollution and had "inquire[d], consistent with good commercial or customary practices, into the previous uses of the property."

At the administrative hearing, the plaintiff had presented the only evidence of what constituted "good commercial or customary practices," which she claims to have performed in making her inquiries. The commissioner determined "that the plaintiff's witnesses were not credible, that [the commissioner] did not believe their statements to the effect that a cursory investigation was the prevalent practice in and before 1987, and that the plaintiff therefore did not prove her entitlement to immunity by a preponderance of the evidence." The trial court inferred, therefore, that the commissioner had found that the customary practice was other than what had been described by the plaintiff's witnesses. Because the commissioner, however, had not presented any evidence to confirm what the appropriate customary practice was, which the plaintiff could then have attempted to rebut, the trial court concluded that the commissioner had relied on evidence not in the record and, consequently, that "the [c]ommissioner's determination that the plaintiff had not proven that she was an innocent landowner pursuant to [§ 22a-452d (1) (B) (i)] was made upon unlawful procedure."[14] The trial

[14] The court noted that "[t]he Connecticut Supreme Court has consistently held that in contested cases, [b]efore an administrative agency may lawfully

court remanded the case for further proceedings on the issue of whether the plaintiff's inquiry into the previous uses of the property was "consistent with good commercial or customary practices."

The commissioner appealed and the plaintiff cross appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal and cross appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). On appeal, the commissioner argues primarily that the trial court incorrectly decided that the commissioner's determination that the plaintiff had failed to prove that she had inquired into the previous uses of the property consistent with good commercial and customary practices was based on unlawful procedure. In her cross appeal, the plaintiff argues that the trial court incorrectly concluded that she did not acquire the property completely by inheritance and, therefore, incorrectly remanded the case for further proceedings instead of remanding the case with direction that she be afforded the status of innocent landowner. Because we agree with the plaintiff and conclude that she had acquired the property by inheritance as contemplated by § 22a-452d (1) (B) (iii), and because our resolution in favor of the plaintiff on her cross appeal is dispositive of the case, we need not address the issues raised by the commissioner's appeal.

In deciding whether the plaintiff is an innocent landowner, we must interpret the statute. "Ordinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. *Police Department* v.

rely on material nonrecord facts within its special knowledge and experience or which it has learned through investigation, it must allow a party adversely affected thereby an opportunity to rebut at an appropriate stage of the proceedings. *New England Rehabilitation Hospital of Hartford, Inc.* v. *Commission on Hospitals & Health Care*, 226 Conn. 105, 142, 149 [627 A.2d 1257] (1993) . . . ." (Citations omitted; internal quotation marks omitted.)

*State Board of Labor Relations*, [225 Conn. 297, 300, 622 A.2d 1005 (1993)]; *Crocetto* v. *Lynn Development Corporation*, 223 Conn. 376, 381, 612 A.2d 1212 (1992). [A]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts. *Lieberman* v. *State Board of Labor Relations*, 216 Conn. 253, 262, 579 A.2d 505 (1990). This case, however, presents a pure question of law, and therefore invokes a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. Id., 263; *State Medical Society* v. *Board of Examiners in Podiatry*, 208 Conn. 709, 718, 546 A.2d 830 (1988). Furthermore, when a state agency's determination of a question of law has not previously been subject to judicial scrutiny, as in this case, the agency is not entitled to special deference. *Lieberman* v. *State Board of Labor Relations*, supra [263]; *Connecticut Light & Power Co.* v. *Department of Public Utility Control*, 210 Conn. 349, 357, 554 A.2d 1089 (1989)." (Internal quotation marks omitted.) *Dept. of Administrative Services* v. *Employees' Review Board*, 226 Conn. 670, 678–79, 628 A.2d 957 (1993).

The plaintiff argues in her cross appeal that she is an innocent landowner pursuant to § 22a-452d (1) (B) (iii) because she inherited the property in question.[15] She further argues that the trial court mistakenly concluded that she only partially inherited the property because part of her interest in the property was the result of the dissolution of Dale, Inc. The commissioner, in contrast, maintains that the plaintiff did not inherit the property, but, rather, that she had acquired it by dissolving Dale, Inc., and distributing the corporate assets to its shareholders. We conclude that although the plaintiff did not take title to the property exclusively

---

[15] The plaintiff must establish that she is an innocent landowner by a preponderance of the evidence. See General Statutes § 22a-452e (a).

by inheritance, because her ownership interest in the corporation was a de minimis formal requirement, she falls within the class of people intended to be protected by the innocent landowner defense.

"It is fundamental that statutory construction requires us to ascertain the intent of the legislature and to construe the statute in a manner that effectuates that intent. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation. . . . In order to determine the meaning of a statute, we must consider the statute as a whole when reconciling its separate parts in order to render a reasonable overall interpretation. . . ." (Citations omitted; internal quotation marks omitted.) *Murchison* v. *Civil Service Commission*, 234 Conn. 35, 45, 660 A.2d 850 (1995).

The words of the statute plainly state that one who acquires an interest in real estate after the date of a spill or discharge is not liable for that spill or discharge if the person acquires the interest by "inheritance" or "bequest."[16] We note first, and the parties no longer dispute, that, in enacting this statute, the legislature did not intend to impose strict legal definitions on the operative words "inheritance" and "bequest." First, because the legal definition of "bequest" is "[a] gift (transfer) by will of personal property"; Black's Law Dictionary (6th Ed. 1990); and the statute refers to the acquisition of land, it would be nonsensical to apply the legal definition of "bequest."[17] Second, if the term

---

[16] The parties do not dispute that the plaintiff acquired the property "after the date of a spill or discharge . . . [and] is not otherwise liable for the spill or discharge as the result of actions taken before the acquisition . . . ." General Statutes § 22a-452d (1) (B).

[17] We presume that the legislature intended to use the word "devise," which is the equivalent to "bequest" except that it applies to land. "Devise" is defined as "[a] testamentary disposition of land or realty; a gift of real

"bequest" were so limited, and the legal definition of "inheritance" were used,[18] the statute would apply to acquisitions of land only if the decedent died intestate. There is no reason to believe that the legislature intended such a limited and technical application of the statute.[19] Rather, we view § 22a-452d (1) (B) (iii) as affording the innocent landowner defense to one who acquires land either through the will of a decedent or by the laws of intestate succession. Therefore, the fact that the plaintiff acquired the property through the decedent's will does not deprive her of the innocent landowner defense.

The legislative history of the statute unequivocally makes clear that it was intended to protect people who have the ownership of polluted property involuntarily thrust upon them, such as those who inherit property. One of the goals of the statute is "to find a balance between, on the one hand, protecting taxpayers from the responsibility of cleaning up private land and, on the other hand, protecting owners who do not cause or contribute to pollution on their land." Conn. Joint Standing Committee Hearings, Environment, Pt. 2, 1993 Sess., p. 613. As Senator John A. Kissel stated, "the case that pulls at our heartstrings is the individual that gains land by inheritance . . . ." 36 S. Proc., Pt. 13, 1993 Sess., p. 4806. Representative Richard D. Tulisano stated that "the bill before us deals with setting up a system in which individuals who otherwise had no control over certain pollution . . . will no longer be liable for cleaning it up." 36 H.R. Proc., Pt. 32, 1993 Sess., p. 11,440. Representative Tulisano further explained that

property by the last will and testament of the donor." Black's Law Dictionary (6th Ed. 1990).

[18] The legal definition of "inheritance" is "[p]roperty which descends to heir on the intestate death of another." Black's Law Dictionary (6th Ed. 1990).

[19] We note that even the legal field has recognized the common usage of the term inheritance. Black's Law Dictionary provides that the term "inherit" has "also come to mean to receive by devise (i.e., by will)."

"[i]t only applies to those people who fit the definition of an innocent landowner. And it is a person who either inherited it, without any knowledge or a trustee who takes in something like that and they are not going to [be] personally liable." 36 H.R. Proc., Pt. 34, 1993 Sess., pp. 12,275–76. "The innocent landowner is by definition innocent, a stranger to the pollution, as it were. Not one who caused the condition although he or she now owns land . . . that is subject to pollution . . . ." Id., p. 12,297, remarks of Representative Dale W. Radcliffe. Representative Richard O. Belden agreed with Representative Tulisano that if the land is inherited, "the person who inherited it is free and clear even though the previous owner may have in fact, been a party to [the] pollution . . . ." Id., p. 12,279.

Additionally, the legislative history indicates that even if the person inheriting the land had some knowledge that the land was polluted, that individual would still be entitled to the innocent landowner defense. Representative Angelo M. Fusco had asked: "[I]f the person knew that the land that they inherited had some contamination, really doesn't understand the extent or the environmental issue, but they inherited it and . . . weren't involved in the contamination, this [statute] would give them some protection?" Id., p. 12,287. Representative Tulisano responded to that question by stating "[t]hat is what it is designed to protect." Id., p. 12,288.

During the Senate debates, Senator Kissel asked whether it is "correct to interpret that this bill, without an inquiry as to whether they knew or reasonably knew of the existence of contamination, that if they acquire the land through inheritance, they are immediately placed in the class of innocent landowner despite any knowledge or reasonableness of their lack of knowledge that may exist . . . ." 36 S. Proc., Pt. 13, 1993 Sess., p. 4804. Senator George C. Jepsen responded that "[i]f they're already liable for acts they may have

committed, they would have remained liable. You cannot cleanse them of that, but apart from that exception, that would be correct." Id. Senator Kissel further inquired: "Why are we absolving people who acquire the land through inheritance? Why are we not asking whether they knew or had a reasonable belief of lack of knowledge? Why are they being targeted as a class to be immediately made innocent landowners . . . ?" Id. Senator Jepsen replied: "Number one, it conforms with the federal law,[20] and number two, if you think it

[20] A similar innocent landowner defense provision exists in federal law, as part of the Comprehensive Environmental Response Compensation and Liability Act. 42 U.S.C. § 9601 et seq. (1988).

Title 42 of the United States Code, § 9607 (b) (1988), provides: "Defenses. There shall be no liability under subsection (a) of this section for a person otherwise liable who can establish by a preponderance of the evidence that the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by—

"(1) an act of God;

"(2) an act of war;

"(3) an act or omission of a third party other than an employee or agent of the defendant, or than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant (except where the sole contractual arrangement arises from a published tariff and acceptance for carriage by a common carrier by rail), if the defendant establishes by a preponderance of the evidence that (a) he exercised due care with respect to the hazardous substance concerned, taking into consideration the characteristics of such hazardous substance, in light of all relevant facts and circumstances, and (b) he took precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from such acts or omissions; or

"(4) any combination of the foregoing paragraphs."

Title 42 of the United States Code, § 9601 (1988), provides in relevant part: "For purposes of this subchapter . . .

"(35) (A) The term 'contractual relationship,' for the purpose of section 9607 (b) (3) of this title, includes, but is not limited to, land contracts, deeds or other instruments transferring title or possession, unless the real property on which the facility concerned is located was acquired by the defendant after the disposal or placement of the hazardous substance on, in, or at the facility, and one or more of the circumstances described in clause (i), (ii), or (iii) is also established by the defendant by a preponderance of the evidence:

"(i) At the time the defendant acquired the facility the defendant did not know and had no reason to know that any hazardous substance which is

through, that would be quite a treat to inherit a piece of polluted land from Uncle Bill and find that the—let's say it was worth a million bucks and there was a $2 million liability for cleanup and what you would in fact inherit, as what Senator Kissel has suggested, is that you would inherit not only the million dollars of land, but the $2 million in cleanup costs. I'm not sure that that's correct. That's a nice present from Uncle Bill." Id., p. 4805.

The commissioner's argument that the plaintiff did not acquire the property completely by inheritance depends upon the fact that the plaintiff owned one share of Dale, Inc., and, upon its dissolution, received a 1 percent interest in the property. During oral argument, the commissioner agreed that had the decedent owned 100 percent of the shares of stock of the corporations that owned the property at the time of his death, and, consequently, had his estate owned 100 percent

---

the subject of the release or threatened release was disposed of on, in, or at the facility.

"(ii) The defendant is a government entity which acquired the facility by escheat, or through any other involuntary transfer or acquisition, or through the exercise of eminent domain authority by purchase or condemnation.

"(iii) The defendant acquired the facility by inheritance or bequest.

"In addition to establishing the foregoing, the defendant must establish that he has satisfied the requirements of section 9607 (b) (3) (a) and (b) of this title.

"(B) To establish that the defendant had no reason to know, as provided in clause (i) of subparagraph (A) of this paragraph, the defendant must have undertaken, at the time of acquisition, all appropriate inquiry into the previous ownership and uses of the property consistent with good commercial or customary practice in an effort to minimize liability. For purposes of the preceding sentence the court shall take into account any specialized knowledge or experience on the part of the defendant, the relationship of the purchase price to the value of the property if uncontaminated, commonly known or reasonably ascertainable information about the property, the obviousness of the presence or likely presence of contamination at the property, and the ability to detect such contamination by appropriate inspection."

Neither our research nor the parties' briefs reveal any cases that have interpreted § 9601 (35) (A) (iii).

of the shares of Dale, Inc., then the plaintiff's acquisition of the property through the estate of the decedent after the dissolution of Dale, Inc., would have conferred upon her the status of an innocent landowner because she would have obtained the property entirely through the decedent's estate.[21]

We cannot draw a different conclusion on the basis of the technicality that the plaintiff was a 1 percent shareholder because the underlying reality of the transaction is that she acquired the property through the decedent's estate. Although the legislative history of § 22a-452d (1) (B) (iii) does not expressly address the present situation, we discern from that history that the legislature's intent in creating the innocent landowner defense was to protect people who have polluted land involuntarily thrust upon them. The plaintiff is one such person. But for the decedent's death and the distribution of his assets according to the terms of his will, the plaintiff would not have acquired the property. Her 1 percent ownership in the corporations was a mere formality, undoubtedly necessitated by the legal requirement that corporations formed in the 1950s have at least three shareholders.[22] See General Statutes (Rev. to 1958) §§ 33-12 through 33-144; *Bator* v. *United Sausage Co.*, 138 Conn. 18, 21–22, 81 A.2d 442 (1951); S. Cross, Connecticut Corporation Law and Practice (1994) § 2.4, pp. 30–31 n.45. Although the decedent had given one share of stock to the plaintiff and one to her sister as statutorily required, it is undisputed that he maintained complete control over the corporations.[23] Because we

[21] In making this argument, the commissioner necessarily agrees that § 22a-452d (1) (B) (iii) does not require that the decedent own the land at the time of his death or that the land be in the decedent's estate at the time of his death. Cf. General Statutes § 22a-452d (1) (B) (iv); see footnote 12.

[22] Dale, Inc., was incorporated in 1955, Mountview, Inc., was incorporated in 1957, Don, Inc., was incorporated in 1958, and L and S Realty, Inc., was incorporated in 1959.

[23] The plaintiff testified during the second hearing before the commissioner that "[i]n 1950, [the decedent] went into business, and I started to raise a

refrain from exalting form over substance, we look to the essence of the transaction. Upon the decedent's death, the ownership of Don, Inc., Mountview, Inc., and L and S Realty, Inc., fell into his estate. Those corporations were subsequently merged into Dale, Inc., which, consequently, owned the property. Thereafter, the plaintiff transferred ownership of the property to the estate by dissolving Dale, Inc., and then distributed an asset—the property—from the estate to herself, as she was permitted to do under the terms of the will.

The commissioner additionally argues that the plaintiff did not have the ownership of the property involuntarily thrust upon her because she could have either left the property in the estate or renounced the gift. Because she voluntarily transferred the property to herself, the commissioner contends that the plaintiff is not an innocent landowner. We disagree. We cannot fault the plaintiff for doing what the will gave her the authority to do, namely, to distribute assets of the estate to herself. The statute does not place any conditions on the plaintiff's decision to take what she is entitled to under the will. Additionally, according to the legislative history, one of the purposes of the legislature in enacting this statute was to protect those who inherit property, even if they knew that the property was polluted, as long as they had no role in causing the pollution. See 36 H.R. Proc., Pt. 34, 1993 Sess., pp. 12,287–88, remarks of Representatives Angelo M. Fusco and Richard D. Tulisano; 36 S. Proc., Pt. 13, 1993 Sess., pp. 4804–4805, remarks of Senators John A. Kissel and George Jepsen. There is no indication that the legislature intended that someone who inherits property must first examine the property and his or her options under a will before deciding whether to take the

family, so he said to me, 'You raise the family and take care of the house and keep your nose . . . out of my business,' and that's exactly how it was to the day he died."

property.[24] Accordingly, because the plaintiff "acquire[d] the interest in real estate by inheritance or bequest" pursuant to § 22a-452d (1) (B) (iii), she is an innocent landowner and is not personally liable for the cost of cleaning up the polluted land.

The judgment is reversed and the case is remanded to the trial court with direction to render judgment for the plaintiff.

In this opinion the other justices concurred.

[24] Indeed, the duty to inquire as to the previous uses of the property involves a separate provision of the innocent landowner defense. See General Statutes § 22a-452d (1) (B) (i).