[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: CROSS MOTIONS FOR SUMMARY JUDGMENT
I. Procedural Background
The plaintiff, Caryn M. Nesbitt, M.D. ("Dr. Nesbit"), d/b/a Women's Care Medical Center, brought this action against defendant, Mary Cummings Satti, M.D. ("Dr. Satti"), by writ and complaint dated July 22, 1998, in this court alleging three counts. CT Page 13468-eq
Count one alleges a breach of contract; count two alleges interference with business relations; and count three alleges a violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), C.G.S. § 42-110a et seq.
The defendant, Dr. Satti, has filed a two-count counterclaim alleging fraudulent and negligent misrepresentation.
After the complaint was filed, the parties have engaged in discovery and the court heard testimony on Dr. Nesbitt's application for a preliminary injunction on September 1 and 4, 1998. By memorandum of decision dated October 14, 1998, this court, (Hurley, J.) issued a preliminary injunction restricting Dr. Satti from certain activities for a period ending July 6, 1999.
Dr. Satti has filed a motion for summary judgment with numerous memoranda and exhibits to which Dr. Nesbitt has filed various memoranda in opposition. Dr. Nesbitt has filed a motion for summary judgment seeking judgment of liability on count one, and judgment in her favor on both counts of Satti's counterclaim, with a memorandum in support of the motion and various exhibits and to supplement her opposition to Satti's motion for summary judgment.
On August 23, 2001, a hearing was held on the cross motions where both parties were represented. Supplemental memoranda were filed on or about September 4, 2001.
This matter will be analyzed and decided independent of the decision with regard to the temporary injunction issued at an earlier date.
II. Facts
Most of the following facts are not substantially in dispute and they are found from the documentation filed with the cross motions:
On or about June 18, 1996, the defendant, Dr. Satti, entered into a written Employment Contract ("the Employment Contract") with Caryn M. Nesbitt, M.D., d/b/a Women's Care Medical Center. Paragraph 9 of the Employment Contract is entitled "Restrictive Covenant". Paragraph 9(a) provides in part that Satti
 shall not practice internal medicine directly or indirectly, whether as a sole practitioner or with CT Page 13468-er others, or as a partner, employee, or agent, and whether in an office, or hospital, clinic or otherwise within the proscribed area for a period of one (1) year from the termination of this Contract and/or Employee's employment by Employer. Notwithstanding the foregoing, the Employee may practice in a hospital as a house officer, or in a clinic whose practice does not include primary care.
Paragraph 9(b) of the Employment Contract defines "proscribed area" as follows: "The proscribed are shall include the area encompassed within a radius of 15 miles from any of the existing offices of the Employer."
Paragraph 2(b) of the Employment Contract provides: "Employee may terminate this Agreement and her employment hereunder at any time upon sixty (60) days prior notice."
Dr. Satti began her employment with Dr. Nesbitt and the Women's Care Medical Center in July, 1996.
Dr. Nesbitt established the Women's Care Medical Center in 1990. Until Dr. Satti opened her practice, the Women's Care Center was the only privately-owned medical practice in the State of Connecticut providing primary medical care exclusively for women.
On December 31, 1996, Dr. Nesbitt incorporated her practice as Women's Care Medical Center, P.C. ("the P.C."). Following the creation of the P.C., Dr. Satti continued to work at the Women's Care Center. Neither her salary, duties nor any other aspect of her employment changed as a result of the creation of the P.C.
On or about January, 1998, Dr. Satti informed Dr. Nesbitt that she thought she was entitled to a bonus under the terms of the Employment Contract. Dr. Nesbitt paid her a bonus of $12,000.00 in January, 1998.
On the afternoon or evening of July 6, 1998, Dr. Satti orally informed Dr. Nesbitt that she was not happy in her employment and could not work for Dr. Nesbitt at the Women's Care Center any further.
On the morning of July 7, 1998, Dr. Satti did not appear for work at the Women's Care Center, although she was scheduled to see patients that morning. Staff at the Women's Care Center noted that Dr. Satti had cleaned out her office. CT Page 13468-es
On July 8, 1998, advertisements appeared in area newspapers announcing the opening of Sr. Satti's office in Old Lyme. Dr. Satti started her own practice on July 8, 1998 at 8 Vista Drive in Old Lyme, Connecticut. The name of the practice was Primary Care for Women, Mary Cummings Satti, M.D.
Dr. Satti first contracted with a consultant to plan the opening of her practice as early as November, 1997.
Prior to her conversation with Dr. Nesbitt on July 6, 1998, Dr. Satti had not informed Dr. Nesbitt or any member of the staff of the Women's Care Center of her intention to terminate her employment and open her own practice.
The distance between Dr. Satti's office and the office of the Women's Care Center is 12.5 miles.
III. Summary Judgment
The parties do not significantly disagree with regard to the law relating to summary judgment.
A "motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried."Wilson v. New Haven, 213 Conn. 277, 279, 567 A.2d 829 (1989). "Summary judgment procedure is an attempt to dispose of cases involving sham or frivolous issues in a manner which is speedier and less expensive for all concerned than a full-dress trial." Mac's Car City, Inc. v. AmericanNational Bank, 205 Conn. 261, 532 A.2d 1302 (1987).
"[A]ny party may move for summary judgment upon any counterclaim or cross complaint as if it were an independent action." Practice Book § 17-44. "Because a counterclaim is a separate and distinct action . . . a party seeking summary judgment on both a complaint and a counterclaim must file an appropriate motion addressed to each." (Citation omitted.) Miller v. Bourgoin, 28 Conn. App. 491, 500,613 A.2d 292, cert. denied, 223 Conn. 927, 614 A.2d 825 (1992).
"The party seeking summary judgment has the burden of showing the absence of any genuine issue (of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of CT Page 13468-et material fact." (Citation omitted; internal quotation marks omitted.)Appleton v. Board of Education, 254 Conn. 205, 209, 757 A.2d 1059
(2000).
"The existence of the genuine issue of material fact must be demonstrated by counter-affidavits and concrete evidence." (Internal quotation marks omitted.) Pion v. Southern New England Telephone,44 Conn. App. 657, 663, 691 A.2d 1107 (1997).
A party's conclusory statements, "in the affidavit and elsewhere," may not "constitute evidence sufficient to establish the existence of disputed material fact." Gutpa v. New Britain Generalk Hospital,239 Conn. 574, 583 (1996).
The court may consider not only the facts presented by the parties' affidavits and exhibits, but also "the inference which could be reasonably and logically drawn from them. . . ." United Oil Co. v. UrbanRedevelopment Commission, 158 Conn. 364, 381, 260 A.2d 596 (1969).
Summary judgment "is appropriate only if a fair and reasonable person could conclude only one way." Miller v. United Technologies Corp., 233 732, 751, 660 A.2d 810 (1995). "[A] summary disposition . . . should be on evidence which a jury would not be at liberty to disbelieve and which would require a directed verdict for the moving party." (Internal quotation marks omitted.) Id., 752. "[A] directed verdict may be rendered only where, on the evidence viewed in the light most favorable to thenonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed." (Emphasis in original.)
"In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . ." (Internal quotation marks omitted.) Appleton v. Board of Education,254 Conn. 205, 209, 757 A.2d 1059 (2000).
"A genuine issue has been variously described as a triable, substantial or real issue of fact . . . and has been defined as one which can be maintained by substantial evidence." (Citation omitted; internal quotation marks omitted.) United Oil Co. v. urban DevelopmentCommission, 158 Conn. 364, 378, 260 A.2d 596 (1969). "[T]he genuine issue of summary judgment procedure requires the parties to bring forward before trial evidentiary facts, or substantial evidence outside the pleadings, from which the material facts alleged in the pleadings can warrantably be inferred." (Internal quotation marks omitted.) Id., 378-79. CT Page 13468-eu
"A material fact has been defined adequately and simply as a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) United Oil Co. v. Urban Development Commission, supra,158 Conn. 379. "Issue of fact encompasses not only evidentiary facts in issue but also questions as to how the trier would characterize such evidentiary facts and what inferences and conclusions it would draw from them." (Internal quotation marks omitted.) Id.
"In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v. Borkowski, 206 Conn. 495, 500,538 A.2d 1031 (1988).'
"A summary judgment, interlocutory in character, may be rendered on the issue of liability alone, although there is a genuine issue as to damages. In such case the judicial authority shall order an immediate hearing before a judge trial referee, before the court, or before a jury, whichever may be proper, to determine the amount of the damages. If the determination is by a jury, the usual procedure for setting aside the verdict shall be applicable. Upon the conclusion of these proceedings, the judicial authority shall forthwith render the appropriate summary judgment." Practice Book § 17-50.
Practice Book § 17-51 authorizes the "severance of claims and partial summary judgment[.]" DeLaurentis v. New Haven, 220 Conn. 225, 255 n. 15,597 A.2d 807 (1991).
IV. Finding of Facts and Conclusions of Law
As summarized above, the court is acting on the defendant's motion for summary judgment dated May 14, 2001 and the plaintiff's motion for partial summary judgment dated June 14, 2001. In her motion, the defendant, Dr. Satti, moves the court to grant summary judgment in her favor with regard to the plaintiff's claims on the grounds that there is no genuine issue as to any material fact and that the defendant is entitled to judgment as a matter of law. This motion does not refer to the defendant's counterclaim.
The plaintiff's motion for partial summary judgment requests judgment on count one of the complaint and on both counts of the defendant's counterclaim alleging that there is no genuine issue of material fact. The court will consider these motions together. CT Page 13468-ev
For the reasons stated below, the defendant, Mary Cummings Satti's motion for summary judgment in her favor is denied and the plaintiff's motion for partial summary judgment is granted as to liability. The court considered the request as an interlocutory matter pursuant to Practice Book § 17-50 on the issue of liability only.
The court finds the facts set forth above and such additional facts and conclusions of law as may be recited separately herein in connection with the
A. The First Count of the Plaintiff's Complaint: The Contract
1. The Notice
 There is no significant dispute as to the fact that defendant, Dr. Satti, left the employ of the plaintiff without providing the notice called for in the contract. The court therefore finds a breach of contract by the defendant in that regard.
2. The Covenant Not to Compete
 The five factors to be considered in evaluating the reasonableness of a restrictive covenant ancillary to an employment agreement are:
1. the length of time the restriction operates;
2. the geographical area covered;
3. the fairness of the protection accorded to the employer;
 4. the extent of the restraint of the employee's Opportunity to pursue his occupation; and
5. the extent of interference with the public's interest.
Scott v. General Iron and Welding Co., 171 Conn. 132, 137 (1976); RobertS. Weiss Associates, Inc. v. Wiederlight, 208 Conn. 525, 529 n. 2 (1988). In this case, the court finds that the length of time the restriction operated, one year, was reasonable in light of the professional nature of the occupation restricted and the costs and expenses relating to the employment of a physician as outlined in the documentation submitted to the court. The defendant has not significantly challenged that conclusion in her brief. With regard to the geographical CT Page 13468-ew area covered, the defendant claims that the 15 mile radius from the plaintiff's office is particularly large but the court finds the same to be reasonable and particularly suited to accomplish the purposes in which the parties intended upon the signing of the employment agreement. This is particularly true in a case involving doctors because the proscription related to the location of the office and not to the location of the patients. In this case, the court finds that the appropriate method by which to measure the distance between offices is a linear measurement from point to point which results in a finding that the defendants medical office is 12.5 miles from the plaintiff's office, therefore, violating the 15 mile limit. The defendant's contrary claim that one should measure the distance by traveling the diverse routes of various roads between the two offices stretches the interpretation of the language used in the contract. Also, the claim of the defendant that since the "proscribed area" could have been extended had the plaintiff chosen to open satellite offices elsewhere is of no benefit to the defendant since there is no evidence available in the documentation file by the parties that the plaintiff has ever opened a satellite or has ever had any plans to do the same.
With regard to the fairness of the protection accorded to Dr. Nesbitt by the terms of the contract, the court finds that, giving consideration to the costs and expenses relating to the employment of physicians as set forth in the documentation and the training involved in the Same, are fairly and reasonably designed to provide the protection which the parties negotiated for in the signing of the employment contract. In this regard the extent of the restraint of Dr. Satti's opportunity to pursue her profession seems not to be overreaching under the circumstances of this case taking into account the fact that there is no restriction of the geographical location of the patients which Dr. Satti could see from an office located 15 miles from the plaintiff's office which she left. There is no restriction on the ability of Dr. Satti to service patients in the Lawrence Memorial "service area" and no evidence that there has been a restriction in fact in that regard.
The major claim of the defendant, Dr. Satti, seems to relate to the fifth prong of the Scott decision relating to the interference with the public's interest. In that regard, the defendant has argued and briefed the question of whether there should be different rules relating to the enforcability of restrictive covenants as they relate to medical professionals in general and specifically in an area which has a so-called "shortage" of medical specialists. In this regard, the defendant has called the court's attention to the case of Collins v. Sears Robuck Co., 164 Conn. 369, 377 (1973) where the court said, "the principal that CT Page 13468-ex a grievance contrary to public policy are void should be applied with caution and only in cases plainly within the reasons on which that doctrine rests . . . the impropriety injurious to the interest of society which will relieve a party of the obligation he has assumed must be clear and certain before the contract will be found void and unenforcable."
There are two reasons from which the court finds the argument of the defendant to be unavailing. First, the contract only restricts or limits the location of the office of the defendant not the area from which the defendant can (and does) solicit patients. There is no restriction on the practice of medicine, on the contrary, the restriction is on the location of the office. Secondly, even if the court were to adopt a special rule relating to the practice of medicine in an area where there is a "shortage" of specialists, the court finds no evidence relating to the restriction of Dr. Satti as to the area of her practice as indicated above. The only restriction being as to the location of the office. The documentation presented in the affidavits and the sworn testimony do not support the defendant's claim in that regard. In addition, the defendant has argued that, if the public's ability to freely choose with whom they will transact business or receive a particular service is restricted, the court has to broaden the scope of the examination to include how large a section of the population will be affected if the covenant is enforced and the probability of the restriction creating a monopoly in favor of the employer, weighing the interests sought to be protected against the interest of the general public. First, it does not appear to the court that the argument is applicable because the contract in question does not restrict the public's ability to freely choose with whom they will transact business or receive a particular service. Nor does it create a monopoly in favor of the plaintiff. The most the defendant can show from the circumstances of this case is that a patient may be required to travel an additional 2.5 miles from the location chosen by the defendant to a location which would comply with the terms of the contract.
B. The Claim of Assignment
In addition to the claims relating to the enforcability of the contract, the defendant raises the issue of whether the creation by Dr. Nesbitt on December 31, 1996 of a professional corporation had the affect of "assigning" the employment contract in violation of the terms of the same prohibiting assignment.
By this argument, the defendant, Dr. Satti, asserts that her employment by Dr. Nesbitt terminated at the time of the forming of the professional corporation. CT Page 13468-ey
The court finds that to attribute an "assignment" to the transfer of a medical practice from the doctor to the doctor's professional corporation is elevating form over function. Our Supreme Court in the case ofDepartment of Social Services v. Saunders, 246 Conn. 686, 710 (1999), discussed an analogous case where an attempt to distinguish between the assets of an individual and that of a trust created for his benefit was elevating "form over substance." See also Cross v. Hudson,42 Conn. App. 59, 65 (1996); Starr v. Commissioner of EnvironmentalProtection, 236 Conn. 722, 743 (1996).
In this case, the court finds that the mere creation of the professional corporation under all the circumstances documented in the filings of the parties does not constitute an assignment which would benefit the defendant's claims. This conclusion is buttressed by the fact that the defendant, Dr. Satti, took advantage of the contract language after the formation of the professional corporation as it related to the claimed entitlement to a bonus as evidenced by the facts found, thus demonstrating that the parties themselves interpreted the situation as not having "terminated" that employment contract.
V. The Defendant's Counterclaim
The plaintiff has claimed to be entitled to summary judgment on both counts of the defendant's counterclaim claiming (count one the plaintiff's fraudulent misrepresentations) and (count two the plaintiff's negligent misrepresentation).
The allegations of the defendant are that the plaintiff represented that she worked full-time as a physician and that other physician's who had worked for her prior to the commencement of Dr. Satti's employment had left for "personal reasons." In the opposition to the plaintiff's motion for summary judgment on these counts, the defendant has provided a July 30, 2001 memorandum in opposition which at page 16, urges the court to review the documentation provided in such a way as to find that there are issues of fact remaining. Even if proven, however, the court finds that such facts do not establish the defendants claim as a matter of law. The court, therefore, reviewing the same concludes that there are no genuine issues of material fact as to the allegations of fraudulent or misrepresentation by the plaintiff with regard to the contract.
VI. Damages
CT Page 13468-ez
With regard to the issue of damages, the court having undertaken the review of the first count of the plaintiff's complaint as a partial, interlocutory matter relating to liability only, will not pursue the issues of damages which have been raised by the parties. Instead, the Practice Book provisions of § 17-50 apply so that there will follow a immediate hearing to determine the amount of damages.
Leuba, J.