Frederick **CARPENTINO**, Plaintiff,

v.

**TRANSPORT INSURANCE
COMPANY**, Defendant.

Civ. A. No. N–84–141 (RCZ).

United States District Court,
D. Connecticut.

March 13, 1985.

---

Joseph J. Kempf, Jr., Pearson, Baum & Weinstein, Hartford, Conn., for plaintiff.

Stephen I. Traub, Lynch, Traub, Keefe and Snow, New Haven, Conn., for defendant.

## RULING ON MOTION TO DISMISS

ZAMPANO, Senior District Judge.

Pending before the Court is a motion to dismiss that raises interesting issues of federal diversity jurisdiction and Connecticut state law. For the reasons that follow, the motion to dismiss is denied.

## I. FACTS

Accepting the factual allegations of the complaint as true, as the Court must,

*Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), the following facts are relevant for the purposes of the motion to dismiss.

On January 16, 1981, plaintiff Frederick Carpentino, a Connecticut citizen, was injured while working for the Perkins Trucking Company ("Perkins"). He received worker's compensation benefits from Perkins' insurance carrier, defendant Transport Insurance Company ("Transport"), under a "voluntary agreement." Transport is an Iowa corporation with its principal place of business outside Connecticut.

After an unspecified period of time, Transport unilaterally stopped making payments as required by the voluntary agreement, in violation of the procedures set forth under the Connecticut Worker's Compensation Act, Conn.Gen.Stat. § 31–296. As discussed subsequently, the act requires state agency approval before "voluntary agreement" benefits may be discontinued.

Plaintiff states in his memorandum in opposition to this motion that he submitted a claim for past due benefits following the termination with the Compensation Commissioner. The Court has not been informed as to the status of those proceedings. This separate action was commenced in two counts on March 1, 1984, seeking unspecified "consequential damages" for 1) the bad faith breach of contractual obligations grounded on the defendant's unilateral discontinuance of benefits; and 2) a violation of the Connecticut Unfair Trade Practices Act, Conn.Gen.Stat. § 42–110b, based on the alleged "unfair" treatment of the plaintiff by the defendant.

Defendant moves to dismiss the complaint in its entirety for lack of jurisdiction, and to dismiss either one or both of the causes of action for failure to state a claim on which relief may be granted.

## II. JURISDICTION

Although the defendant concedes there is diversity of citizenship between the named parties, it contends that the action must be dismissed under 28 U.S.C. § 1332(c), which provides in pertinent part:

> [I]n any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business.

The plaintiff has neither joined the insured, Perkins, as a party nor submitted proof of Perkins' citizenship.[1] Therefore, defendant argues, the Court lacks jurisdiction over the plaintiff's "direct action" against the insurer of Perkins.

In 1964, Congress enacted § 1332(c) "to eliminate from diversity jurisdiction tort claims in which both parties are local residents, but which under a state direct action statute, are brought against a foreign insurance company without joining the local insured as a defendant." *Velez v. Crown Life Ins. Co.,* 599 F.2d 471, 473 (1 Cir.1979) (citing *White v. United States Fidelity and Guaranty Co.,* 356 F.2d 746, 747 (1 Cir.1966) ). *See also Irvin v. Allstate Ins. Co.,* 436 F.Supp. 575, 576–77 (W.D.Okla. 1977); *Bourget v. Government Employees Ins. Co.,* 313 F.Supp. 367, 370–71 (D.Conn. 1970), *rev'd on other grounds,* 456 F.2d 282 (2 Cir.1972). Thus, on the state of the present record, the defendant's motion must be granted unless the Court determines that this lawsuit is not a "direct action" against the insurer.

It is well established that the term "direct action" as used in § 1332(c) is defined "as those cases in which a party suffering injuries or damage for which another is legally responsible is entitled to bring suit against the other's liability insurer without joining the insured or first obtaining a judgment against him." *Beck-*

---

1. The plaintiff states in his reply brief that Perkins was organized under New York law and had its principal place of business in New York.

His failure to submit an appropriate affidavit or to seek an amendment of the complaint on the issue is difficult for the Court to understand.

ham v. Safeco Ins. Co. of America, 691 F.2d 898, 902 (9 Cir.1982). *See also Irvin,* 436 F.Supp. at 575. The gravamen of the plaintiff's complaint here concerns the conduct of the *insurer* and not the insured. Monetary relief is sought for Transport's wrongful termination of plaintiff's benefits; no unlawful acts are alleged to have been committed by Perkins. Therefore, because Transport's liability is grounded on its own conduct and not Perkins', the Court is satisfied that § 1332(c) is not applicable to the case *sub judice.*

## III. WRONGFUL TERMINATION OF BENEFITS

Count one of the complaint alleges that the defendant acted tortiously and in bad faith by terminating plaintiff's compensation benefits contrary to the procedures mandated by the Workers Compensation Act (the "Act"), Conn.Gen.Stat. § 31–296. In challenging the viability of this cause of action in a judicial forum, the defendant asserts that the grievance falls within the exclusive subject matter jurisdiction provision of the Act. Therefore, it is argued, the plaintiff is bound to follow the administrative procedures set forth in the Act to remedy the alleged wrong, and may not obtain redress through this independent tort action.

As with most states, Connecticut has adopted a comprehensive and detailed statutory scheme for the filing and enforcement of workers' compensation claims against employees. Section 31–284(a) of the Act, the general exclusivity provision, broadly prescribes in relevant part that "[a]ll rights and claims between employers and employees ... arising out of the personal injury or death sustained in the course of employment as aforesaid are abolished other than rights and claims by this chapter."

▪ The Act expressly provides for the filing of a voluntary agreement between an injured employee and the employer (or the insurance carrier) for the payment of compensation benefits. *Id.* § 31–296. Upon approval of the agreement by the Compen-

sation Commissioner, it has the same legal effect as a compensation award and may not be discontinued without notice and stated reasons to the Commissioner and the employee. *Id.* § 31–300. A discontinuance of benefits does not become effective until approved by the Commissioner in writing. *Id.* § 31–296. Because the Commissioner has jurisdiction over "any proper action" concerning a voluntary agreement "during the whole compensation period applicable to the injury in question," *id.* § 31–315, it seems clear that disputes directly relating to the modification or discontinuance of benefits under a voluntary agreement must be resolved by the Commissioner under the procedures set forth in the Act. In addition, should there be a unilateral discontinuance of benefits without proper notice and approval, the Commissioner is empowered to levy a penalty against the employer or insurer of "a reasonable attorney's fee together with interest at a rate of six percent per annum on the discontinued payments." *Id.* § 31–300.

▪ The Court is convinced that, if the plaintiff in the instant action was seeking a recovery measured by loss of compensation payments under the voluntary agreement, the exclusivity provisions of the Act would preclude independent relief here, and the motion to dismiss would of necessity be granted. But, as emphasized by the plaintiff, he seeks no such relief. Rather, he seeks redress for the "bad faith" conduct on the part of the insurer which, he argues, is a tort separate and apart from any wrong covered by the Act. Damages would not be assessed by the value of the compensation benefits withheld, but by the injury proximately caused by the insurer's intentional acts.

▪ Hence, the precise issue presented is whether the exclusivity provisions of the Act bar an employee's action at law for "consequential damages" caused by the intentional "bad faith" conduct of an employer's insurer in terminating voluntary compensation payments under the Act. No reported case by the Connecticut Supreme

Court has addressed the question; therefore, this Court "must make an estimate of what the state's highest court would rule to be its law." *Cunningham v. Equitable Life Assurance Soc. of the United States,* 652 F.2d 306, 308 (2 Cir.1981).

The Court's research discloses that the jurisprudence on the issue which has evolved in other states has resulted in conflicting decisions. In at least seven states, statutes that contain either an exclusive remedy provision or a penalty clause have been construed to bar a tort action against an insurer for wrongful termination or delay of compensation payments. *See Escobedo v. American Employers Ins. Co.,* 547 F.2d 544, 545 (10 Cir.1977) (applying New Mexico law); *Whitten v. American Mutual Liability Ins. Co.,* 468 F.Supp. 470, 475 (D.S.C.1977) (applying South Carolina law), *aff'd mem.,* 594 F.2d 860 (4 Cir.1979); *Hixon v. State Compensation Fund,* 115 Ariz. 392, 393, 565 P.2d 898, 899 (1977); *Old Republic Ins. Co. v. Whitworth,* 442 So.2d 1078, 1979 (Fla.App.1983); *Bright v. Nimmo,* 253 Ga. 378, 320 S.E.2d 365, 368 (1984); *Robertson v. Travelers Ins. Co.,* 95 Ill.2d 441, 448 N.E.2d 866, 871 (1983); *Jadofsky v. Iowa Kemper Ins. Co.,* 355 N.W.2d 550, 552 (Wisc.App.1984).[2] California and Alabama would apparently bar an independent action in cases that merely allege "bad faith" on the part of the insurer, although perhaps in outrageous cases of insurance company misconduct an independent action would be allowed. *See Palmer v. R.L. Kautz & Co.,* 141 Cal.App.3d 155, 190 Cal.

Rptr. 139, 144 (1983); *Everfield v. State Compensation Ins. Fund,* 115 Cal.App.3d 15, 171 Cal.Rptr. 164, 165–66 (1981);[3] *Bearden v. Equifax Servs.,* 455 So.2d 836, 836 (Ala.1984).

The reasoning of these cases was summarized in *Robertson,* 448 N.E.2d at 870, as follows:

> The rationale of these cases has typically been that the legislature, anticipating that bad faith in delaying payment of benefits would occur on occasion, provided a "quick, simple and readily accessible method" of resolving disputes over such payments without "the proof and defenses incident [to a common law action], the intolerable delay in resolution of a lawsuit, economic waste to all and expense to the worker" [citations omitted], or the specter of "multiple jurisdictions being engaged in the resolution of the same basic questions with the possibility of conflicting results" [citations omitted].

*Id. See also Whitworth,* 442 So.2d at 1079 ("intentional nonperformance of a statutory duty" may be remedied before workers' compensation board); *Hicks v. Board of Education,* 77 Ill.App.3d 974, 33 Ill.Dec. 683, 397 N.E.2d 16, 19–20 (1979) (50 percent penalty in cases of wrongful termination of compensation payments implies legislative intent to bar tort action at law).[4]

On the other hand, at least eight states have permitted independent tort actions in cases involving wrongful termination or delay of benefits, or in other situations sim-

---

**2.** Wisconsin formerly recognized the right to an independent action, *Coleman v. American Universal Ins. Co.,* 86 Wisc.2d 615, 273 N.W.2d 220, 221 (1979), but the legislature amended the state's workers compensation act to remove such right, Wisc.Stat.Ann. § 102.18(1)(bp) (West Supp.1984–1985).

**3.** The prevailing rules in California are reviewed in Kornblum, *Extracontract Actions Against Insurers: What's Ahead in the Eighties?,* 20 Forum 58 (Sept. 1983).

**4.** As a whole, the states that do not recognize independent tort actions for "bad faith" delay or termination of benefits tend to provide for relatively harsh administrative penalties if payments are wrongfully delayed or terminated, usually in addition to attorney's fees. Ala.Code § 25–5–8(e) (1975) (civil penalty of double amount payable plus injunctive relief); Ariz. Rev.Stat.Ann. § 23–966(A) (West Supp.1983–1984) (employee entitled to immediate payment from state, then state may recover against carrier); Cal.Lab.Code § 5815 (West 1971) (award increased 10%); Fla.Stat.Ann. § 440.20(8)–(9) (West 1984) (award increased by up to 20% plus 12% interest); Ga.Code § 34–9–221 (1982) (award increased up to 20%); Ill.Ann.Stat. ch. 48, § 138.19(k) (Smith-Hurd Supp.1984–1985) (award increased 50%); S.C.Code Ann. § 42–9–260 (Law Co-op.1976) (25% increase in award); Wisc.Stat.Ann. § 102.18(1)(bp) (West Supp. 1984–1985) (award increased by lesser of $15,000 and 200% of total compensation).

ilar to the case at bar. *See Hollman v. Liberty Mutual Ins. Co.,* 712 F.2d 1259, 1261 (8 Cir.1983) (applying South Dakota law); *Reed v. Hartford Accident and Indemnity Co.,* 367 F.Supp. 134, 135 (E.D.Pa. 1973) (applying Pennsylvania law); *Stafford v. Westchester Fire Ins. Co.,* 526 P.2d 37, 43 (Alaska 1974), *overruled on other grounds, Cooper v. Argonaut Ins. Co.,* 556 P.2d 525 (Alaska 1976); *Savio v. Travelers Ins. Co.,* 678 P.2d 549, 552 (Colo.App.1983), *cert. granted,* No. 83 FC 316 (Colo. Mar. 5, 1984); *Gibson v. National Ben Franklin Ins. Co.,* 387 A.2d 220, 222 (Me.1978);[5] *Broaddus v. Ferndale Fastener Div.,* 84 Mich.App. 593, 269 N.W.2d 689, 693 (1978); *Birkenbuel v. Montana State Compensation Ins. Fund,* 687 P.2d 700, 702 (Mont. 1984); *DeMarco v. Federal Ins. Co.,* 99 A.D.2d 114, 472 N.Y.S.2d 464, 466–67 (1984). *Cf. Baker v. American States Ins. Co.,* 428 N.E.2d 1342, 1346–47 (Ind.App. 1981); *Massey v. Armco Steel Co.,* 652 S.W.2d 932, 933–34 (Tex.1983). As noted above, California and Alabama would apparently allow an independent action only if the insurer's conduct is particularly outrageous. *Compare Unruh v. Truck Ins. Exchange,* 7 Cal.3d 616, 102 Cal.Rptr. 815, 498 P.2d 1063 (1972), *with Everfield,* 171 Cal.Rptr. at 165–66. *Bearden,* 455 So.2d at 836. It is also appropriate to mention that the First Circuit has ruled that an independent tort action against the insurer is not barred by an exclusivity provision in the federal Longshoremen's and Harbor Workers Compensation Act, 33 U.S.C. §§ 901–950. *Martin v. Travelers Ins. Co.,* 497 F.2d 329, 331 (1 Cir.1974).

Various analyses have been employed to justify the refusal to limit the scope of the courts' jurisdiction in the cited cases. Most of the authorities rely heavily on the determination that the various workers' compensation acts were not intended or designed to compensate for the type of harm alleged. *See, e.g., Gibson,* 387 A.2d at 222 (injury from wrongful termination of benefits does not "arise out of employment," therefore action not prohibited by exclusivity clause); *Hayes v. Aetna Fire Underwriters,* 187 Mont. 148, 609 P.2d 257, 261 (Mont.1980) (injury not in course of employment and legislature did not foresee intentional misconduct by insurers in enacting penalty provision). As stated in the recent leading case in New York, *DeMarco,* 472 N.Y.S.2d at 466:

> [T]he gravamen of plaintiffs' cause of action lies in intentional tort and/or fraudulent breach of an insurer's duty of good faith and fair dealing; many of the damages claimed are clearly outside of the purview of awardable workers' compensation benefits. It was never intended that injuries thus caused were to be exclusively the province of the Workers' Compensation Board.

*Id.* An important factor in these decisions appears to be the relatively low statutory penalties for wrongful delay.[6] A leading commentator in the field appears to support this line of decisions, at least in cases that allege more than a "simple delay in payments" or mere "termination of treatment." 2A Larson, *Workmen's Compensation Law* § 68.34(c), at 13–76 (1983).

■■■ While not free from doubt, this Court believes that the Connecticut Supreme Court, when confronted with the issue, will conclude that actions, grounded on rather unusual allegations of intentional tortious acts as in the instant case, survive

---

**5.** *Gibson* is noted in *Tortious Withholding of Insurance Benefits: Gibson v. National Ben Franklin Ins. Co.,* 30 Me.L.Rev. 308 (1978).

**6.** *See* Alaska Stat. § 23.30.030(7) (1984) (carriers' licenses may be revoked, no express penalty in favor of employee); Colo.Rev.Stat. § 8–52–110 (1973) (no express penalty in favor of employee); Maine Rev.Stat.Ann. tit. 39, § 104–A (Supp.1984–1985) (award may be increased up to $25 per day); Mich.Comp.Laws Ann. § 418.-631(1) (West Supp.1984–1985) (possible revocation of license for repeated or unreasonable failure to pay, no provision for increased award to employee); Mont.Code Ann. § 39–71–611 (1983) (provision for costs and attorney's fees); N.Y.Work.Comp.Law § 25(3)(c) (McKinney Supp.1984–1985) (20% increase in award to employee); Pa.Stat.Ann. tit. 77, § 1059 (West Supp. 1984–1985) (provision for 5% penalty to state); S.D.Comp.Laws Ann. §§ 62–5–1 to 62–5–9 (1978) (no express penalty).

the Act's exclusivity provisions. On balance, several factors preponderate in support of this conclusion. First, the Act speaks only to compensation for personal injury or death "arising out" of "employment." It does not purport to provide redress for an otherwise cognizable tort that occurs outside the "natural and necessary incident or consequence of the employment," *Dennison v. Connecticut Good Humor, Inc.*, 130 Conn. 8, 10–11, 31 A.2d 332 (1943), nor does it authorize damages for a wrong to an employee unless "it occurs within the period of his employment, at a place where he may reasonably be, and while he is reasonably fulfilling the duties of his employment ...." *Davis v. Goldie Motors, Inc.*, 129 Conn. 240, 242, 27 A.2d 164 (1942). In the instant case, these criteria for the Commissioner to have jurisdiction under the Act are not present; the plaintiff's cause of action is predicated on a wrong committed by the insurer long after his original work-related injury and the termination of his employment at Perkins.

■ Second, the Act should not be an impervious barrier, insulating a wrongdoer from the payment of just and fair damages for intentional tortious acts only very tenuously related to workplace accidents.[7] The public interest requires that wrongs be redressed, that unlawful conduct be discouraged and punished, and that an innocent victim be compensated for his injuries.

Third, it is reasonable to infer that, because the penalty provision in the Act provides only for attorney's fees and six percent interest, the legislature contemplated that additional remedies could be sought in an action at law for tort damages to compensate fully claimants for the insurer's actions unrelated to workplace accidents. The penalties prescribed, which in the over-

whelming majority of the cases will be triggered by an insurer's mere inadvertence, negligence, or mismanagement of the employee's personal injury claim, seem hardly sufficient to remedy an insurer's intentional tortious conduct.

Fourth, it is questionable whether an "exclusivity" provision in the Act can be constitutionally sustained if it results in an aggrieved person being deprived of his due process rights to full redress for another's willful misconduct. Finally, the Court is not persuaded that the effect of its holding will open the floodgates to lawsuits against insurers by every injured employee who may be dissatisfied with the processing or the amount of his compensation benefits. Very special factual allegations and narrow circumstances are required to institute the action. Moreover, prompt resolution of the meritless action is readily available by a motion for summary judgment.

For the foregoing reasons, the defendant's motion to dismiss count one of the complaint is denied.

## IV. UNFAIR TRADE PRACTICE

· The second count of the complaint alleges that defendant's actions constitute an unfair trade practice under the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn.Gen.Stat. § 42–110b, which provides in pertinent part that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in conduct of any trade or commerce." *Id.* § 42–110b(a). In addition to its position that the exclusivity provision of the Act is a bar to count one, which the Court has rejected, the defendant moves to dismiss count two on the ground that the instant private dispute does not embody any claim cognizable under CUTPA.[8]

7. Professor Larson notes in discussing cases involving insurance carrier harassment during claim investigation, which are somewhat similar to the type of case *sub judice,* that it could be argued that any damages the claimant incurred as a result of wrongful conduct of the carrier were merely an "aggravation" of the first injury. However, he sharply criticized that view, arguing that "[t]o say that the second injury was only an aggravation or extension of

the first injury, one would have to accept a kind of but-for theory that could lead to preposterous results." 2A Larson, *supra* § 68.34(b), at 13–67.

8. CUTPA prohibits any "person" from engaging in unfair acts or practices in the conduct of any "trade or commerce." Conn.Gen.Stat. § 42–110b(a). Transport does not argue that it is not a "person," nor does it suggest that the activity involved in this matter is not "trade or com-

The defendant's argument is premised on the lack of a "specific and substantial" public interest involved in the plaintiff's lawsuit, and that, even if relief is granted, it would merely provide the plaintiff with a redress of a private wrong rather than be an effective sanction "to deter unfair trade practices that injure the general consuming public." *Ivey, Barnum & O'Mara v. Indian Harbor Properties*, 190 Conn. 528, 540, 461 A.2d 1369 (1983).

The defendant cites correctly the criteria enunciated in *Ivey, Barnum* to sustain an award under CUTPA. However, on June 8, 1984, the effect of *Ivey, Barnum* was annulled when the legislature enacted Public Act 84–468, which states in part: "Proof of public interest shall not be required in any action brought under [CUTPA]." *Id.* § 2. No sound reason is apparent not to apply the amendment retroactively in this action. In any event, the Court is satisfied that, even under the *Ivey, Barnum* standards, the cause of action should stand.

■ While there appears to be no published Connecticut decision applying CUTPA to the facts alleged, it is generally accepted that three factors should be considered in determining the viability of a claim for an unfair trade practice under CUTPA: "(1) whether the practice injures consumers; (2) whether it violates established public policy; (3) whether it is unethical or unscrupulous." Federal Trade Commission Statement of Policy on the Scope of Consumer Unfairness Jurisdiction ("Un-

fairness Statement"), [1969–1983 Transfer Binder] Trade Reg.Rep. (CCH) ¶ 50,421, at 55,937.[9] *See FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244–45, 92 S.Ct. 898, 905–06, 31 L.Ed.2d 170 (1972); *Conaway v. Prestia*, 191 Conn. 484, 492–93, 464 A.2d 847 (1983). *See also McLaughlin Ford v. Ford Motor Co.*, 192 Conn. 558, 568, 473 A.2d 1185 (1984).[10]

■ On the present record, the injury factor is evident: the plaintiff seeks monetary relief for damages incurred as a result of Transport's intentional misconduct. The misconduct is not outweighed by any countervailing benefits to the public. Moreover, the injury, caused by an insurer not chosen by the plaintiff, could not have been reasonably avoided by the plaintiff. *See* Unfairness Statement at 55,949; *McLaughlin Ford*, 192 Conn. at 569–70, 473 A.2d 1185. Second, unilateral discontinuance of the voluntary agreement, expressly prohibited by statute, may be deemed to violate public policy. Unfairness Statement at 55,-949 (conduct that violates public policy "as it has been established by statute, common law, industry practice, or otherwise" contributes to finding of unfairness). The third test, unscrupulous behavior, is "largely duplicative" of the other two criteria, *id.*, but nevertheless would certainly be present here if the proof supports the plaintiff's allegations of wrongdoing by the insurer.

For these reasons, the motion to dismiss count two for failure to state a claim on which relief may be granted is denied.

merce," therefore the Court does not address the issues.

**9.** As in all CUTPA cases, the Court must "be guided by" interpretations of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a)(1). Conn.Gen.Stat. § 42–110b(b).

Most "unfairness" cases arising under the FTC Act and CUTPA concern sales practices. However, the Court considers the quoted factors above highly useful in the analysis of the case *sub judice*, which does not involve advertising. *See* Unfairness Statement at 55,947 n. 10 ("These standards for unfairness are generally applicable to both advertising and nonadvertising cases.").

It should be noted briefly that these factors were not intended to be applied in cases alleging "unfair methods of competition," which are

also proscribed by § 5(a)(1) of the FTC Act and by CUTPA. *See* Unfairness Statement at 55,947. Nor are they intended to apply to cases alleging "deceptive" acts or practices, in which an entirely different set of factors is applied. *See* Bailey & Pertschuk, *The Law of Deception: The Past as Prologue*, 33 Am.U.L.Rev. 849 (1984).

**10.** Analysis of recent Connecticut CUTPA cases may be found in Bartlett & Romano, *Connecticut Unfair Trade Practices Act and Connecticut Unfair Insurance Practices Act: Expanding Legal Horizons*, 58 Conn.B.J. 302, 302–11 (1984). Federal cases construing § 5 of the FTC Act are reviewed in Averitt, *The Meaning of Unfair Acts on Practices in § 5 of the Federal Trade Commission Act*, 70 Geo.L.J. 225 (1981).

Finally, defendant requests that the Court abstain from ruling on the CUTPA claim, citing as authority *Naylor v. Case and McGrath, Inc.,* 585 F.2d 557, 564–65 (2 Cir.1978). The Court declines the invitation. *See Bailey Employment System, Inc. v. Hahn,* 655 F.2d 473, 477 n. 6 (2 Cir.1981).

## IV. ORDER

For the foregoing reasons, the motion to dismiss is denied. Counsel shall file a stipulated proposed scheduling order for further proceedings in this lawsuit within 30 days.