Carol MARTIN, et al., Plaintiffs,

v.

**RELIANCE INSURANCE COMPANY,**
**Defendant.**

**Civil No. 3:95CV1993 (PCD).**

United States District Court,
D. Connecticut.

Jan. 27, 1997.

Raymond M. Hassett, Louis N. George, Hassett, George & Siegel, Hartford, CT, I. Edmund Hare, Jr., Wethersfield, CT, for Plaintiff, Carol Martin.

Louis N. George, Hassett, George & Siegel, Hartford, CT, for Plaintiff, Robert Martin.

April Haskell, Montstream & May, Glastonbury, CT, for Defendant.

### *RULING ON MOTION TO DISMISS*

DORSEY, Chief Judge.

Plaintiffs filed an eight-count complaint in the Superior Court asserting that defendant insurance company tortiously mishandled plaintiff Carol Martin's workers' compensation claim. The cause was removed to this court on defendant's motion pursuant to 28 U.S.C. §§ 1332 and 1441(b). Defendant moves to dismiss all of plaintiffs' claims pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

### I. *Background*

The following facts are presumed, as alleged by plaintiffs. Plaintiff Carol Martin was an employee of People's Bank when she injured her shoulder in a work related accident in July 1993. Mrs. Martin filed a timely claim for workers' compensation benefits which was accepted by defendant Reliance Insurance Company ("Reliance"), the workers' compensation insurer for People's Bank. Mrs. Martin claims, however, that Reliance mishandled her claim and denied her the benefits to which she was entitled.

Plaintiffs assert causes of action for breach of implied covenant of good faith and fair dealing, negligence, infliction of emotional distress, reckless conduct, and violations of the Connecticut Unfair Insurance Practices Act, Conn.Gen.Stat. § 38a–815 *et seq.* (1996) ("CUIPA"), and the Connecticut Unfair Trade Practices Act, Conn.Gen.Stat. § 42–110a *et seq.* (1996) ("CUTPA"). Mrs. Martin

asserts that these violations resulted in aggravation to her medical condition, emotional distress, and economic harm. To her own claims for damages she adds those of plaintiffs Robert Martin and Christopher Martin, her spouse and child, respectively, for their own suffering and for the loss of her consortium resulting from Reliance's conduct.

Reliance moves to dismiss the Martins' complaint in its entirety. For the reasons set forth below, the motion is denied as to counts three, five, six, seven and eight, and granted as to the remaining counts of the complaint.

## II. *Discussion*

In deciding a motion to dismiss, the allegations of the complaint are construed in the light most favorable to the plaintiff. *See Harsco Corp. v. Segui,* 91 F.3d 337, 341 (2d Cir.1996). The motion is granted only if it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claims which would entitle them to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

### A. Workers' Compensation Exclusivity

Defendant seeks dismissal of all counts of the complaint on the ground that they fall within the exclusive jurisdiction of the Workers' Compensation Commissioner ("Commissioner") under the comprehensive statutory scheme to handle such claims. In particular, they point to the exclusive remedy provision of the Connecticut Workers' Compensation statute, Conn.Gen.Stat. § 31–284(a) (1996),[1] in asserting that this court lacks jurisdiction to hear plaintiffs' claims.

The holding in *Carpentino v. Transport Ins. Co.,* 609 F.Supp. 556 (D.Conn.1985) requires dismissal of some, but not all, of plaintiffs' claims on exclusivity grounds. That case, like this one, involved allegations of

tortious mishandling of a workers' compensation claim by an insurer. Noting an almost equal split among other jurisdictions which had addressed the issue, *Carpentino* predicted that the Connecticut Supreme Court would side with those which allow civil suits against insurers where plaintiffs do not seek to recover the workers' compensation benefits for a workplace injury, but rather state independent claims for injuries arising from the subsequent intentional mishandling of their workers' compensation claims by insurers. *Id.* at 561–62.

While tort actions involving workers' compensation claims are without doubt intertwined with the underlying claims for benefits, there are sound reasons for treating them as independent of the claims for benefits, which are exclusively within the jurisdiction of the Commissioner. *Carpentino* identifies four such reasons: (1) The Workers' Compensation Act "speaks only to compensation for personal injury or death 'arising out' of 'employment,' " not to "a wrong committed by the insurer long after [the employee's] original work-related injury;" (2) The public interest requires that "the Act should not be an impervious barrier, insulating a wrongdoer from the payment of just and fair damages for intentional tortious acts only very tenuously related to workplace accidents;" (3) The limited remedies for such conduct in the Workers' Compensation Act suggest that the legislature contemplated resort to courts for certain independent insurer torts; and (4) An exclusivity provision which "results in an aggrieved person being deprived of his due process rights to full redress for another's willful misconduct" would probably not withstand constitutional scrutiny. 609 F.Supp. at 562. This rationale is persuasive.

However, the rule of *Carpentino* is carefully limited to "rather unusual allegations of *intentional* tortious acts." *Id.* at 561 (em-

1. That section provides:

> An employer shall not be liable to any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained, but an employer shall secure compensation for his employees as provided under this chapter, except that compensation shall not be

> paid when the personal injury has been caused by the wilful and serious misconduct of the injured employee or by his intoxication. All rights and claims between employer and employees, or any representatives or dependents of such employees, arising out of personal injury or death sustained in the course of employment are abolished other than rights and claims given by this chapter....

phasis added). Lower Connecticut state courts following *Carpentino* have applied its predictive rule narrowly, examining complaints count-by-count and allowing to stand only those claims explicitly alleging intentional or willful conduct on the part of an insurer. *See, e.g., Bariko v. Travelers Ins. Co.,* No. CV 29 16 52, 1993 WL 28758, at *4 (Conn.Super.Ct. Jan. 29, 1993); *see also Quimby v. Kimberly Clark Corp.,* 28 Conn.App. 660, 613 A.2d 838, 843–45 (1992) (applying similar analysis to claims of employer misconduct). Thus, even with proper regard for a plaintiff's right to plead in the alternative, negligence counts, which are of necessity inconsistent with a finding of intentional misconduct, are properly dismissed, as are those counts which do not specifically allege intentional insurer misconduct. *See Bariko v. Travelers Ins. Co.,* 1993 WL 28758, at *4.

Plaintiffs' first count, incorporated by reference into the other counts, includes verbs which might be construed as suggesting wilfulness, such as "interfering," "frightening," and "refused," but does not specifically allege the intent required by Connecticut Supreme Court precedents in the context of exceptions to exclusive Commissioner jurisdiction for injuries intentionally caused by employers. *See Suarez v. Dickmont Plastics Corp.,* 229 Conn. 99, 639 A.2d 507, 512 (1994) (to fall within "intention to injure" exception to workers' compensation exclusivity, plaintiff must prove that injury was substantially certain to follow from defendant's knowing misconduct); *Mingachos v. CBS, Inc.,* 196 Conn. 91, 491 A.2d 368, 375 (1985) (employer must have intended to cause injury to plaintiff). The same heightened level of intent must be alleged for the narrow *Carpentino* exception to apply to claims against insurers. *See, e.g., Lyman v. CIGNA Property & Cas. Ins. Co.,* No. CV 91 0390815 S, 1995 WL 317049, at *1 (Conn.Super.Ct. May 17, 1995); *Bariko v. Travelers Ins. Co.,* 1993 WL 28758, at *1. The absence of any such language of knowledge or intent in count one, which establishes the factual predicates for all other counts, is

conspicuous and goes to something so fundamental as the jurisdiction of this court to hear plaintiffs' claims. Count one, lacking in this regard, must be dismissed without prejudice.[2]

The second count, sounding in negligence, is dismissed with prejudice, because negligent conduct is, as a matter of law, incompatible with the finding of intent required by *Carpentino, Mingachos,* and *Suarez. See Bariko v. Travelers Ins. Co.,* 1993 WL 28758, at *4 (dismissing negligence count as fundamentally inconsistent with requirement of intent). Reckless conduct, alleged in count four, is also inconsistent with the requisite finding of intent, because by definition, an actor who acts recklessly "does not intend to cause the harm which results." *Mingachos,* 491 A.2d at 376 (quoting 3 Restatement (Second) of Torts § 500 cmt. f (1965)). *Suarez,* which elucidated the intent to injure rule of *Mingachos,* did not purport to alter this result. *Cf. Suarez,* 639 A.2d at 518–19 (distinguishing between truly intentional conduct and mere recklessness) (Borden, J., dissenting and concurring). Count four is therefore also dismissed with prejudice.

Only count three makes specific allegations of intent, which allow it to withstand defendant's motion to dismiss on exclusivity grounds. It alleges that defendant acted "with conscious disregard for Plaintiff's known rights and with intention of causing, or willfully disregarding the probability of causing, unjust and cruel hardship and mental stress to the Plaintiff." The Connecticut Supreme Court has narrowly circumscribed the set of genuine intentional injuries which will take a case out of the workers' compensation scheme, *see Mingachos,* 491 A.2d at 375; *Suarez,* 639 A.2d at 512, but viewing these allegations in the light most favorable to the plaintiffs, as the court must, count three survives defendant's motion to dismiss. It specifically alleges that Reliance intended to deny Mrs. Martin benefits and intended to injure her, meeting the standard of *Mingac-*

---

**2.** As to this count dismissed without prejudice, it is certainly within the prerogative of the plaintiffs to redraft these allegations in an amended complaint. However, as noted in *Mingachos,* "the use of the word 'intent' in allegations [of

intentional tort] 'is not a talisman that can change [otherwise inadequate] allegations into colorable claims of true intentional torts.' " 491 A.2d at 375 (quoting *Keating v. Shell Chem. Co.,* 610 F.2d 328, 332 (5th Cir.1980)).

hos and *Suarez. See Bariko v. Travelers Ins. Co.,* 1993 WL 28758, at *4 (denying dismissal of count with similar allegations of intent).

As to Plaintiffs' CUTPA and CUIPA claims, counts five and six, the caselaw is unclear as to whether intentional insurer misconduct must be alleged for such claims to fall outside of the exclusivity of the workers' compensation statute. Some cases suggest that they are separate statutory causes of action to which the exclusivity bar does not apply, finding alternative bases for dismissal of CUTPA and CUIPA claims even where it has been held that the exclusivity bar preempts other claims. *See, e.g., Ciarleglio v. Fireman's Fund Ins. Co.,* No. CV90 27 60 28S, 1992 WL 96827, at *5 (Conn.Super.Ct. May 4, 1992). Other cases appear to clump CUIPA and CUTPA claims with other claims for purposes of exclusivity analysis. *See, e.g., Martin v. New England Masonry,* No. 092336, 1991 WL 85200, at *1 (Conn.Super.Ct. May 6, 1991); *Gingeroski v. American Policyholders,* No. 5:92–289 (JAC), Endorsement Ruling on Motion to Dismiss (D.Conn. July 27, 1992).

■ However, it need not be decided whether intentional conduct must be alleged to avoid dismissal of CUIPA and CUTPA claims, because counts five and six, while not explicitly incorporating the allegations of intent included in the preceding count three,[3] effectively incorporate those allegations, speaking of the "aforementioned" and "foregoing" acts as constituting violations of CUTPA and CUIPA. They will be deemed, therefore, to have stated a claim for intentional insurer misconduct which is not barred by workers' compensation exclusivity under the rule of *Carpentino.*

■ Counts seven and eight, alleging bystander injury and loss of consortium on the part of Mrs. Martin's husband and son, also survive Reliance's motion to dismiss on exclusivity grounds. Such claims are derivative and inextricably attached to the underlying claims. *See Izzo v. Colonial Penn Ins. Co.,* 203 Conn. 305, 524 A.2d 641, 645 (1987). As several of Mrs. Martin's claims survive Reliance's exclusivity challenge, so must the derivative claims of her spouse and child.

As to those counts which survive the motion to dismiss, Defendant's heavy reliance on *Coollick v. Town of Windham,* 7 Conn. App. 142, 508 A.2d 46 (1986), in an attempt to persuade us to abandon *Carpentino,* is misplaced. Defendant argues that *Coollick,* an Appellate Court decision issued after *Carpentino,* establishes that independent claims for bad faith termination or delay in payment of workers' compensation benefits fall within the exclusive jurisdiction of the Commissioner, contrary to the holding of *Carpentino. Coollick,* however, addressed the related but separate issue of the sufficiency of a plaintiffs' 42 U.S.C. § 1983 claim for refusal to pay benefits against a self-insured city employer, under the unremarkable stipulation by the parties that a claim solely for the workers' compensation benefits themselves would not properly be before the state court. While *Coollick* does include broad language to the effect that no private causes of action arises out of an employer's failure to conform to the mandates of the Workers' Compensation Act, *id.* 508 A.2d at 49, it does not reach the specific issue of intentional insurer misconduct addressed by *Carpentino. Coollick* does not mention, let alone repudiate, *Carpentino,* which is persuasive and decisive on this issue. Nor have lower Connecticut courts regarded *Coollick* as governing cases involving allegations of insurer misconduct. *See, e.g., Lyman v. CIGNA Property & Cas. Ins. Co.,* 1995 WL 317049 at *1; *Rotz v. Middlesex Mut.,* No. 307488, 1993 WL 540987, at *2 (Conn.Super.Ct. Dec. 16, 1993); *Bariko v. Travelers Ins. Co.,* 1993 WL 28758 at *3; *Lenz v. CNA Assurance Co.,* No. CV89 02 87 37S, 1992 WL 229270, at *1 (Conn.Super.Ct. Sept. 3, 1992). These post-*Coollick* Connecticut decisions clearly establish that claims for the intentional injurious actions of an insurer are within the jurisdic-

---

**3.** Only count five comes·close to making such an allegation, stating that "Defendant, knowing that ... benefits are justly due, and ... necessary to pay Plaintiff's necessities of life, nevertheless deprived Plaintiff or [sic] such benefits...."

Standing alone, this would not meet the intent requirement. Knowledge that a claimant relies upon benefits to meet her financial needs is insufficient to allege an intentional tort. *See Quimby v. Kimberly Clark Corp.,* 613 A.2d at 843–44.

tion of the courts notwithstanding the workers' compensation exclusivity provision.

Nor is this case governed by the other precedents cited by Reliance, all of which involved quite different considerations. *Quimby v. Kimberly Clark Corp.*, 613 A.2d 838, like *Coollick*, dealt with the conduct of the employer itself, as opposed to a third-party insurer. *Hoard v. Sears, Roebuck & Co.*, 122 Conn. 185, 188 A. 269 (1936), also involved a suit against an employer, for the intentional misconduct of the injured employee's coworker, wherein the injured employee sought damages from the employer in addition to a workers' compensation award. Finally, *Love v. J.P. Stevens and Co., Inc.*, 218 Conn. 46, 587 A.2d 1042 (1991), was also a "double-dipping" case, opining on the quite different issue of whether an employee who sued the manufacturer of the machine which injured him could be required to repay a portion of his workers' compensation benefits as a result of his products liability recovery.

All of these are distinguishable from a claim solely for the tortious conduct of an insurer well after the workplace injury occurred. In those cases where eligibility for compensation or the possibility of multiple recoveries is at issue, it makes sense to treat insurers and other third parties as alter egos of the employer. *See Barrette v. Travelers*

*Ins. Co.*, 28 Conn.Supp. 1, 246 A.2d 102 (1968) (treating workers' compensation and liability insurer responsible for inspecting workplace, preventing accidents, and warning employee of danger as alter ego of employer). By contrast, here, as in *Carpentino*, there is no duplicative or even single claim for the injury itself but a claim for the insurer's liability for its own tortious conduct independent of and subsequent to the workplace injury. Such injury cannot be said to have arisen in the course of employment and the insurer cannot be viewed in such instances merely as an alter ego of the employer. *Carpentino* and its progeny establish the rule governing such cases. None of the cases cited by Reliance suggest otherwise.

However, as to those counts which ultimately remain to be tried, proof must be limited to the wrongfulness of Reliance's conduct, as wholly divorced as it can be from the workplace injury itself. The compensability of the initial workplace injury is a matter wholly within the jurisdiction of the Commissioner. While it will be difficult to assess plaintiffs' claims without the benefit of a determination of eligibility for the claimed level of benefits,[4] and it would certainly have been better for plaintiffs to have obtained such a determination in the first instance,[5]

---

4. *Carpentino*, it should be noted, involved a voluntary benefits agreement between the injured employee and his employer, which had the same legal effect as an award from the Commissioner. 609 F.Supp. at 559. *Carpentino* has been distinguished in cases where liability for the workplace accident has been contested by the insurer on behalf of the employer. *See, e.g., Ciarleglio v. Fireman's Fund Ins. Co.*, 1992 WL 96827, at *2; *see also Gingeroski v. American Policyholders*, No. 5:92–289 (JAC), Endorsement Ruling on Motion to Dismiss (D.Conn. July 27, 1992) (opining that CUIPA and CUTPA claims could not be adjudicated without determining the validity of workers' compensation claims); *DeOliveira v. Ross & Roberts, Inc.*, No. CV 90 0278480 S, 1991 WL 258993 (Conn.Super.Ct. Nov. 21, 1991) (dismissing claims against employer and insurer where there was no finding of eligibility for workers' compensation benefits). In those cases, courts have held that the insurer's liability has not accrued, and that therefore plaintiffs cannot state any causes of action against the insurer for mishandling of a claim, *Carpentino* notwithstanding. However, Reliance's acceptance of liability for "all reasonable and necessary medical treatment" arising from Mrs. Martin's workplace ac-

cident has the same legal effect as a Commissioner award or a voluntary benefits agreement of the sort discussed in *Carpentino*. *Mora v. Aetna Life and Cas. Ins. Co.*, 13 Conn.App. 208, 535 A.2d 390, 392 (1988) (failure to contest liability within twenty days of notice of injury fixes employer liability); *Marella v. Seaco Ins. Co.*, No. CV 312710S, 1996 WL 367740, at *1 (Conn.Super.Ct. June 4, 1996) (same). *Carpentino* is thus indistinguishable in this regard.

5. Administrative review of benefit disputes is available to aggrieved plaintiffs pursuant to Conn.Gen.Stat. §§ 31–297 and 31–298. As a general rule, however, administrative remedies need not be exhausted when the relief available in the administrative forum would be inadequate to the claims presented. *See Cahill v. Board of Educ.*, 198 Conn. 229, 502 A.2d 410, 417 (1985). The *Carpentino* decision is based in part on a determination that the available administrative remedy is inadequate for the tortious insurer conduct here alleged, evincing a legislative intent to allow recourse to courts in such cases. *See* 609 F.Supp. at 562 (noting that Conn.Gen.Stat. § 31–330 provides only for six-percent interest and attorney's fees in cases of wrongful discon-

the task of segregating the conduct of the insurer and injury therefrom is not so hopeless as to require dismissal of plaintiffs' claims.[6] Defendant's motion to dismiss counts three, five, six, seven and eight on workers' compensation exclusivity grounds is denied.

## B. Remaining Objections

### 1. Count Three

■ Defendant further asserts that count three should be dismissed because a "corporation Defendant cannot be held responsible for a claim of emotional distress predicated upon the state of mind of an employee," Defendant's Motion to Dismiss ¶ 11, unless the employee is " 'of such rank in the corporation that he may be deemed the alter ego of the corporation under the standards governing disregard of the corporate entity,' " Defendant's Response to Plaintiff's Objection to Motion to Dismiss at 12 (quoting *Mingachos*, 491 A.2d at 374 (quoting *Jett v. Dunlap*, 179 Conn. 215, 425 A.2d 1263, 1265 (1979))).

The quoted language of *Mingachos*, however, was speaking to the entirely separate question of when an employer should be held responsible for a workplace injury intentionally caused by an employee's coworker. *See* 491 A.2d at 374. As Mrs. Martin was not a coworker of any employee of Reliance, the rule discussed in *Mingachos* has no application here. Emotional distress liability has been predicated on the acts of insurer's claims representatives in cases similar to this one. *See, e.g., Lyman v. CIGNA Property & Cas. Ins. Co.*, 1995 WL 317049.

Defendant's motion to dismiss count three on this alternative ground is therefore denied.

### 2. Count Five

■ Reliance asserts that count five fails to state a CUIPA claim in that it alleges injury to a single plaintiff without adequately alleging that Reliance's conduct constitutes a general business practice as required by *Quimby v. Kimberly Clark Corp.*, 613 A.2d at 845, and *Mead v. Burns*, 199 Conn. 651, 509 A.2d 11 (1986).[7] Quite to the contrary, count five specifically alleges that the conduct of Reliance toward plaintiffs was not an isolated incident, asserting that the acts were part of "a general business practice of the Defendant, which included similar acts with other claimants." Some judges view such bald conclusions with suspicion, asserting that they are legal conclusions which, when unsupported with names of other affected claimants or facts relating to other claims, are properly dismissed. *See Ciarleglio v. Fireman's Fund Ins. Co.*, No. CV90 0276028 S, 1993 WL 541609, at *3 (Conn.Super.Ct. Dec. 16, 1993). The weight of authority, however, holds that such allegations suffice to prevent the striking of CUIPA and CUTPA claims. *See, e.g., Carpentino*, 609 F.Supp. at 562–63; *Seeds v. AIG Life Ins. Co.*, No. 375958, 1996 WL 727334, at *2–*3 (Conn.Super.Ct. Dec. 6, 1996); *Cloutier v. Liberty Mut. Ins. Co.*, No. CV 90278184S, 1996 WL 488900, at *2 (Conn.Super.Ct. Aug. 9, 1996); *Martin v. New England Masonry*, 1991 WL 85200 at *1. Plaintiffs' allegations of Reliance's misconduct suffice to withstand dismissal of their CUIPA claim at this stage of the proceedings. *See Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir.1980) (noting that Rule 12(b)(6) motion "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof").

tinuation of benefits); *see also Rotz v. Middlesex Mutual*, 1993 WL 540987 at *3 (holding that administrative remedy available to plaintiff alleging insurer misconduct was inadequate).

6. Of course, this creates incentives for "every injured employee who may be dissatisfied with the processing or the amount of his compensation benefits" to style undeserving claims as tort actions against insurers. *Carpentino*, 609 F.Supp. at 562. However, as this court noted in *Carpentino*, "prompt resolution of the meritless

action is readily available by a motion for summary judgment." *Id.*

7. The court expresses no opinion as to whether this requirement still applies. One Superior Court decision observes that the Connecticut Supreme Court has of late entertained a number of CUTPA claims alleging only isolated incidents of misconduct, signaling an apparent retreat from the rule of *Mead v. Burns*. *See Amato v. Sherwood Forest, Inc.*, No. CV92–0341185, 1995 WL 558984, at *6 (Conn.Super.Ct. Sept. 13, 1995).

## 3. Count Six

Defendants first assert that having failed to state a CUIPA claim, plaintiffs cannot make out a CUTPA claim. Since plaintiffs have stated a valid CUIPA claim, this argument requires no further discussion.

Defendants further assert that CUTPA is not applicable to employer/employee relationships. *See, e.g., Quimby v. Kimberly Clark Corp.,* 613 A.2d at 844. This argument, too, must fail. While a workers' compensation insurer stands in the employer' shoes and is viewed as the alter ego of the employer for many purposes, this fiction does not extend to claims against an insurer for its own intentional tortious misconduct in the handling of a workers' compensation claim, for reasons already stated. The cases cited by Reliance are not to the contrary. The only workers' compensation case cited by Reliance involved a self-insured employer rather than an independent insurer, and did not reach the issue of whether a similar claim against an independent insurer would have been barred under Reliance's alter ego theory. *See id.* In fact, CUTPA claims are routinely allowed to go forward against workers' compensation insurers. *See, e.g., Carpentino,* 609 F.Supp. at 562–63; *Seeds v. AIG Life Ins. Co.,* 1996 WL 727334, at *2–*3; *Cloutier v. Liberty Mut. Ins. Co.,* 1996 WL 488900, at *2; *Martin v. New England Masonry,* 1991 WL 85200 at *1. Reliance's contention that Mrs. Martin cannot state a claim against it because Mrs. Martin was Reliance's employee is without merit.

Defendant's motion to dismiss count six is accordingly denied.

## 4. Counts Seven and Eight

*Bystander Injury Claims.* Reliance contests the derivative claims of Mrs. Martin's husband and son primarily on the ground that Connecticut courts do not recognize a tort cause of action for bystander injuries. Overruling a precedent cited by Reliance, the Connecticut Supreme Court has reversed course on this issue since the parties filed their briefs. Connecticut now recognizes a cause of action for bystander emotional distress, provided the injury is rea-

sonably foreseeable and four additional conditions are met: (1) The bystander must be closely related to the victim; (2) The emotional injury must result from the bystander's contemporaneous or near-contemporaneous sensory perception of the injurious event or conduct; (3) The injury to the victim must involve death or serious physical injury; and (4) The bystander's emotional injury must be serious and not an abnormal response. *Clohessy v. Bachelor,* 237 Conn. 31, 675 A.2d 852, 865 (1996) (allowing parent and sibling to pursue recovery for emotional distress resulting from witnessing fatal injury to relative).

Two subsequent Connecticut Superior Court decisions have held that *Clohessy* did not expressly overrule the bar to bystander injuries in medical malpractice actions established by *Maloney v. Conroy,* 208 Conn. 392, 545 A.2d 1059 (1988), which is also cited by Reliance in support of its motion. *See SanAngelo v. Lewis,* No. CV960132931, 1996 WL 589243 (Conn.Super.Ct. Oct. 4, 1996); *Wildman v. Connecticut Allergy and Asthma Assocs., P.C.,* No. 334473, 1996 WL 745857 (Conn.Super.Ct. Dec. 16, 1996). The *Wildman* court opined that medical malpractice injuries probably lack the suddenness required to meet the contemporaneous sensory perception element of bystander recovery, then added two other considerations unique to the medical malpractice context, the effect of bystander liability on patient visitation practices and quality of patient care. *Wildman,* 1996 WL 745857 at *3. The court also went on to note that while *Clohessy* discussed the medical malpractice precedents, it did not expressly overrule them, overruling only *Strazza v. McKittrick,* 146 Conn. 714, 156 A.2d 149 (1959), an accident case.

While the precise scope of *Clohessy* will doubtless require further definition, it is predicted that the special considerations articulated in the medical malpractice cases will not categorically bar the application of bystander liability in other contexts, including workers' compensation. The medical malpractice cases characterize the *Maloney* bar as an "exception ... for medically specific policy reasons in the area of medical malpractice." *Wildman,* at *4. While some of

the concerns articulated by the *Wildman* court also apply to a claim for insurer misconduct, particularly the requirement of a sudden, contemporaneously perceivable injury, this court is not prepared to say that such a claim could never be made out as a matter of law, so as to take this case out of the Connecticut Supreme Court's holding in *Clohessy.* As such, Reliance's challenge to Counts Seven and Eight on this ground must fail.

 *Loss of Consortium Claims.* Mrs. Martin's son's claim for filial loss of consortium is also challenged by Reliance on the ground that Connecticut courts do not recognize such claims, limiting consortium claims to spouses. This is, in fact, the position of the majority of Connecticut Superior Court holdings on the issue. *See Wildman,* 1996 WL 745857, at *6 (collecting cases). This court has previously endorsed that majority position in the context of a motion to dismiss, reasoning that Connecticut Supreme Court precedents on the issue of consortium suggest that the cause of action arises from incidents of the marital relationship and has historically been limited to that relationship. *Nardini v. John T. Callahan & Sons, Inc.,* No. 3:94CV00717 (AVC), Ruling on Defendant's Motion to Dismiss (D.Conn. Sept. 29, 1994). What was noted by Judge Covello in 1994 remains true; namely, that the trend in Connecticut Superior Court holdings recognizing filial consortium claims cannot yet be characterized as a "growing majority" which will persuade the courts to recognize such a cause of action:

> Until the Connecticut legislature or supreme court extends the loss of consortium claim to protect rights arising outside of the civil contract of marriage, this court cannot conclude, as a matter of law, that a claim which has never been formally recognized in Connecticut may allow the plaintiffs to prove a set of facts which would entitle them to relief.

*Id.* at 9. No intervening change in the law requires a differing result in this case. *See Wildman,* 1996 WL 745857, at *6 (adopting what continues to be majority position of denying such claims). Accordingly, no set of facts asserted by plaintiffs would enable an award of filial loss of consortium damages to plaintiff Christopher Martin.

Counts seven and eight survive Reliance's motion to dismiss. Proof on count eight, however, will be limited to potential bystander injuries suffered by Mrs. Martin's son. The motion to dismiss count eight is granted insofar as it asserts a claim for filial loss of consortium.

### III. *Conclusion*

For the foregoing reasons, count one of the Complaint is dismissed without prejudice, and counts two and four are dismissed with prejudice, for failure to state a claim upon which relief can be granted, in that jurisdiction is lacking in the claims as pled. Defendant's motion to dismiss the remaining counts of the Complaint is denied, with proof on count eight being limited to possible bystander injuries suffered by plaintiff Christopher Martin.

SO ORDERED.