Warren F. BANKS, Plaintiff,

v.

The PAUL REVERE LIFE INSURANCE COMPANY, Defendant.

No. 3:98CV00002(RNC).

United States District Court,
D. Connecticut.

Nov. 12, 1998.

Christopher M. Licari, Lynch, Traub, Keefe & Errante, New Haven, CT, for Plaintiff.

Theodore J. Tucci, Robinson & Cole, Hartford, CT, for Defendant.

## RULING AND ORDER

CHATIGNY, District Judge.

This case presents the question whether an insurance company's refusal to continue to pay benefits to an insured under a disability insurance policy on the ground that the insured is no longer entitled to benefits violates Conn.Gen.Stat. § 38a–816(12), a provision of the Connecticut Unfair Insurance Practices Act (CUIPA) prohibiting dis-

crimination based on physical disability ("subsection (12)"). The question arises in the context of a suit by an insured to collect disability benefits from his insurer. Plaintiff contends that defendant's refusal to continue to provide him with benefits constitutes a violation of subsection (12), entitling him to relief under the Connecticut Unfair Trade Practices Act (CUTPA), Conn.Gen. Stat. § 42–110a, et seq. *See Mead v. Burns,* 199 Conn. 651, 663, 509 A.2d 11 (1986) Defendant has moved for summary judgment on the CUTPA count, contending that subsection (12) does not apply to its refusal to continue to honor plaintiff's disability claim. The court agrees. Accordingly, the motion for summary judgment is granted.

## I. *Background*

In 1988, defendant issued an insurance policy providing plaintiff with long-term disability coverage. In June 1992, plaintiff suffered a back injury requiring surgery. Defendant paid plaintiff total disability benefits from August 1992 through March 1993. Thereafter, it paid him residual disability benefits. In February 1995, while payments were continuing, defendant offered to pay plaintiff a lump sum in exchange for settlement of the disability claim and return of the policy. Plaintiff declined to accept the buyout offer and defendant continued to pay him residual disability benefits. In December 1996, defendant notified plaintiff that it would no longer pay him disability benefits on the ground that he was no longer disabled. Defendant did not cancel the policy, which is still in force.

Plaintiff sued defendant in Connecticut Superior Court, alleging breach of contract and a violation of CUTPA. The complaint alleges that plaintiff continues to suffer from the disability he sustained in 1992 and that there is a reasonable medical probability he will remain disabled until at least December 2009. Defendant removed the case to this court based on diversity jurisdiction. The parties agree that the case is governed by Connecticut law.

## II. *Discussion*

Subsection 12 prohibits

[r]efusing to insure, refusing to continue to insure or limiting the amount, extent or kind of coverage available to an individual or charging an individual a different rate for the same coverage because of physical disability or mental retardation, except where the refusal, limitation or rate differential is based on sound actuarial principles or is related to actual or reasonably anticipated experience.

Conn.Gen.Stat. § 38a–816(12). Plaintiff contends that defendant's termination of his benefit payments violates this provision in that it limits the coverage available to him because of his physical disability. Defendant contends that this subsection of the statute does not apply to unfair claim practices.

■■■ The issue presented by this case appears to be one of first impression.[1] Because there is no case on point, the court's task is to predict how the Connecticut Supreme Court would resolve the issue. *First Investors Corp. v. Liberty Mutual Ins. Co.,* 152 F.3d 162, 165 (2d Cir.1998).

In Connecticut, as elsewhere, the process of statutory construction begins with the language of the statute. If the language is ambiguous, guidance may be found in the legislative history and purpose of the statute. *See Westport Taxi Serv., Inc. v. Westport Transit Dist.,* 235 Conn. 1, 39–40, 664 A.2d 719 (1995). One " 'must consider the statute as a whole when reconciling its separate parts in order to render a reasonable overall interpretation....' " *Ferreira v. Safeco Ins. Co. of America,* No. 323152, 1996 WL 411999, at *2 (Conn.Super. July 5, 1996) (quoting *Starr v. Commissioner of Envtl. Protection,* 236 Conn. 722, 737, 675 A.2d 430 (1996)). " '[No part of a legislative enactment is to be

---

1. Nineteen subsections are contained in Conn. Gen.Stat. § 38a–816. Of these, four employ language parallel to that contained in Conn.Gen. Stat. § 38a–816(12), prohibiting refusal of coverage to individuals because they are blind or partially blind (§ 38a–816(13)), have been exposed to diethylstilbestrol (§ 38a–816(14)), have been victims of family violence (§ 38a–816(18)), or because of genetic information indicating a predisposition to a disease (§ 38a–816(19)). No case has been found interpreting any of these provisions.

treated as insignificant or unnecessary, and there is a presumption of purpose behind every sentence, clause or phrase ... [N]o word in a statute is to be treated as superfluous.]' ". *Id.* (quoting *Peck v. Jacquemin,* 196 Conn. 53, 66, 491 A.2d 1043 (1985)). " 'Insofar as it is possible, the entire enactment is to be harmonized, each part made operative.' " *Id.* (quoting *Peck,* 196 Conn. at 66, 491 A.2d 1043).

■ Turning, then, to the terms of the statute, the language of subsection (12) prohibits refusing to insure, limiting coverage, or charging different rates because of physical disability, except when justified by sound actuarial principles. This unambiguous language makes it clear that the subsection applies to the specified underwriting activities. The language gives no indication that the subsection was meant to apply to an insurer's unreasonable refusal to continue to pay benefits in connection with a disability claim.

Plaintiff's contention that defendant's action in stopping disability payments may be viewed as "limiting the amount, extent or kind of coverage available to [him]" within the meaning of subsection 12 is unpersuasive. Defendant has not rescinded the policy or taken any other action to limit the amount, extent or kind of coverage it provides. To hold that the statute applies to defendant's termination of payments, even though the coverage afforded by the policy has been left undisturbed, would extend the scope of the statute beyond the limits established by its plain terms.

■ Another subsection of § 38a–816 addresses unfair claim practices. That subsection—subsection (6)—prohibits

[c]ommitting or performing with such frequency as to indicate a general business

practice any of the following ... (d) refusing to pay claims without conducting a reasonable investigation based upon all available information ... (g) compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds ... (n) failing to promptly provide a reasonable explanation of the basis in the insurance policy ... for denial of a claim.

Conn.Gen.Stat. § 38a–816(6) Subsection (6) is the provision plaintiffs usually rely on to challenge an insurer's unreasonable refusal to pay benefits. *See, e.g., Martin v. Reliance Ins. Co.,* 954 F.Supp. 476, 477 (D.Conn.1997); *Nuzzo v. Nationwide Mut. Ins. Co.,* No. CV 960394015S, 1998 WL 405091, at *2 (Conn.Super. July 1, 1998). Subsection (6) differs from other subsections of § 38a–816 in that it is not violated by a single incident, whereas the other subsections are violated by a single act. *See Ferreira,* 1996 WL 411999, at *1.[2]

Plaintiff is challenging defendant's refusal to honor his claim, conduct expressly addressed by subsection (6).[3] At oral argument, plaintiff's counsel stated that an insurer's unreasonable refusal to pay a disability claim violates subsection (6) but that a violation of subsection (6) has not been alleged in the complaint because it imposes a heavier burden of proof than subsection (12).

■ Thus, plaintiff's interpretation of subsection (12) constitutes an attempt to obtain greater protection for disability claimants against unfair claim practices than the protection afforded claimants under subsection (6). Plaintiff contends that this construction of the statute is justified because it would further the legislature's purpose of protect-

---

**2.** To recover for a violation of subsection (6), an insured must prove that the defendant's conduct was part of a "general business practice." *Nuzzo,* 1998 WL 405091, at *2 (quoting *Lees v. Middlesex Ins. Co.,* 229 Conn. 842, 849, 643 A.2d 1282 (1994)). In other words, a plaintiff must allege "facts pertaining not only to the defendant's handling of her own claim, but also to allegedly similar claims of ... other people." *Id.; see also Martin,* 954 F.Supp. at 482.

**3.** Plaintiff has not alleged that defendant's offer of a lump sum payment in exchange for settlement of the disability claim and return of the policy was itself illegal or unfair. Even assuming that the "buy-out" offer was wrongful, it would not suffice to support a cause of action under subsection (6) because, as discussed in the text, a single incident does not constitute a "general business practice" under that subsection.

ing the disabled against unfair insurance practices.

Subsection (12) should be liberally construed to achieve its remedial purpose. However, the legislature's desire to eliminate disability discrimination in underwriting does not support an inference that it intended to exempt disability claimants challenging unfair claim practices from the burden of proof placed on claimants under subsection (6). Construing subsection (12) to provide for such an exemption arguably would conflict with the principle of nondiscrimination embodied in subsection (12). Moreover, it is reasonable to assume that if the legislature intended subsection (12) to apply to an insurer's refusal to pay a disability claim, it would have said so explicitly, especially in light of the proximity of subsection (6).[4]

Plaintiff contends that failing to apply subsection (12)'s prohibition against disability discrimination to decisions regarding "ongoing coverage" allows insurers to engage in "post-claim underwriting, which has been found to be improper." *See* Pl.Opp. at 9.[5] If defendant's refusal to continue to pay disability benefits in connection with plaintiff's claim constitutes post-claim underwriting, plaintiff has a statutory remedy in subsection (6), provided he can prove that defendant has engaged in similar conduct to the detriment of other consumers.

### III. *Conclusion*

Defendant's motion for summary judgment on plaintiff's CUTPA claim is granted without prejudice to the filing of an amended complaint, within 30 days of the date of this ruling, pleading a violation of Conn.Gen.Stat. § 38a–816(6) rather than Conn.Gen.Stat. § 38a–816(12).

So ordered.

---

**4.** As plaintiff has noted, the legislature added subsection (12) to the statute several years after the inclusion of subsection (6).

**5.** Post-claim underwriting can occur when an insurance company fails to do an adequate underwriting until after a claim is submitted then denies the claim asserting that the insured is not entitled to coverage. *See, e.g., White v. Continental Gen. Ins. Co.,* 831 F.Supp. 1545, 1556 (D.Wyo.1993).